## Case No. 8,443.

### LOCKETT v. HILL et al.

[1 Woods, 552;[1] 1 Cent. Law J. 149; 79 N. B. R. 167.]

Circuit Court, N. D. Georgia. Jan. 29. 1874.

MORTGAGES—POWER TO SELL—COLLATERAL POWER —REVOCATION—FRACTIONS OF DAY—POSSESSION BY MORTGAGEE — PURCHASE BY MORTGAGEE — BANKRUPTCY OF MORTGAGOR.

1. A collateral power. although irrevocable. expires with the life or bankruptcy of the appointor: otherwise is case of a power coupled with an interest.

[Cited in Johnson v. Johnson (S. C.) 3 S. E. 610.]

2. In Georgia a mortgage is merely a security for debt. and passes no title. estate or interest to the mortgagee. Therefore a power of sale in a mortgage is not, in Georgia. a power coupled with an interest, but is merely a collateral power.

[Cited in Patapsco Guano Co. v. Morrison. Case No. 10,792.]

3. It follows that, in Georgia. a power of sale contained in a mortgage cannot be executed after the mortgagor has been adjudged a bankrupt.

4. Courts will regard fractions of a day when it is necessary to ascertain which of two events first happened. Thus, .where a power to sell mortgaged premises was made to the mortgagee, and a lease of the mortgaged premises to a third person was made at the same time. which lease was referred to in the power. the court noticed the fact that the lease was executed previously to the power, for the purpose of ascertaining whether the mortgagee had been actually put in possession of the mortgaged premises or not.

5. If a mortgagee acquire possession of real property after the expiration of a lease made by the mortgagor to a third person, and there is no·

---

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

evidence that the property was rented to him by the mortgagor, he will, in Georgia, be a mere tenant at will or at sufferance.

6. The possession by a mortgagee of the mortgaged premises as tenant at will or at sufferance is not a possession of such dignity as will, in connection with a power of sale granted to the mortgagee, create a power coupled with an interest.

7. Where the power granted to a mortgagee to sell the mortgaged premises is limited to a specified time, if the mortgagee fail to execute it within that time, the power is forever gone.

8. A mortgagee with a power to sell cannot himself become the purchaser, either in severalty, joint tenancy or otherwise. The relations of vendor and vendee cannot thus be united in the same person. Thus, where a mortgage with power of sale was made to an individual, he could not execute the same by selling the mortgaged property to a firm of which he was a member.

9. A mortgagee with power to sell is, in Georgia, a trustee for the mortgagor, his heirs, etc., and as such is accountable in equity; and this, although the power may not be regarded as collateral, but as coupled with an interest.

10. This relation of trustee is not discharged by the bankruptcy of the mortgagor, but, upon the happening of such event, the trustee can no longer be held to account in a state court. The courts of bankruptcy possess a broad and comprehensive authority, sufficiently extensive to enable them, in such cases, to entertain jurisdiction over the rights of the parties, to take possession of the mortgaged property and administer it in accordance with the bankrupt law [14 Stat. 517].

In equity. Submitted on pleadings and evidence.

Mr. Ely, for Lockett, the mortgagee and complainant.

Mr. Hoge, the assignee, in pro. per.

Mr. Culberson and Mr. Conley, for both defendants.

ERSKINE, District Judge. This suit arises out of a mortgage given by Hill, in January, 1871, to Lockett. The bill states that Hill being indebted to Rust, Johnson & Co. (of which firm Lockett was a member), and in settlement and liquidation thereof, drew his draft on Burt, Johnson & Co., payable to his own order, for $7.451.75, and it was accepted by them and transferred to Lockett; and to secure its payment and in consideration of supplies and money, and to discharge a certain draft in favor of Ketchum & Hartridge, Hill executed the mortgage to Lockett on 1.625 acres of land and certain personal property, and which mortgage contained, among other stipulations, a power to sell the land on nonpayment. Lockett also alleges that he was placed in possession of the property, real and personal, on the 20th of December, 1871, and continued in possession until he conveyed the land under his power, on the 13th of December, 1873, for $4.875, to the firm (of which he was then a member) of Rust, Johnson & Co., and that he is still in possession of the personal property. He prays an injunction against Hoge, the assignee, to restrain him from selling any of the personal property, or interfering with any of the mortgaged property, real or personal; and asks for a subpoena against

both Hill, the bankrupt, and Hoge; and the bill prays for "other and further relief."

There is an addendum to the bill—an offer to take the property at a fair valuation to be determined by the court, or to sell the personal property by virtue of his power, and account to the assignee for any surplus; or to surrender the property upon payment of his debt. The conveyance in mortgage from Hill, the bankrupt, to Lockett, the mortgagee and complainant, was executed on the 16th of January, 1871, by which he conveyed to Lockett a plantation in Dougherty county, in this state, containing sixteen hundred and twenty-five acres, also certain personal property on the land consisting of fourteen mules, all the stock of hogs, cattle, etc., wagons, carts and farming implements, and likewise the crops of corn, cotton and fodder to be raised on the place during the said year 1871; provided, nevertheless, if Hill shall pay on or before the 1st day of October, 1871, a certain draft accepted by Rust & Son, and all advances so made during the year for provisions, and shall save Lockett harmless on the Ketchum & Hartridge draft, and all costs, expenses and fees, then the deed to be void, else of full force. The mortgage further stipulates that if Hill shall fail to pay the draft accepted by Rust & Son, at the time and in the manner specified, and also the advances for the present year, then Rust & Son or Lockett shall have the right to foreclose said lien or mortgage on the growing crops and other personal property, in accordance with the statutes of this state. As to the real estate, it is further agreed that Lockett shall have the right to foreclose the mortgage upon the same, or to sell said plantation upon the most favorable terms practicable, either at public sale to the highest bidder, or at private sale, and to account to Hill, after paying off said debts, for the balance; and Hill constitutes and appoints Lockett his attorney in fact, ratifying his acts and doings in the premises, provided, nevertheless, that this power of attorney to convey and make titles shall not operate until after the first day of October next, 1871.

On the 20th of December, 1871, Hill and Lockett entered into a written agreement, under seal, reciting that Hill being indebted to Lockett in a large amount, and to secure the debt, as well as for other purposes, he, on the 16th of January, 1871, executed to Lockett a mortgage to certain property, real and personal, and being still indebted to Lockett in the sum of six thousand seven hundred and thirty-three dollars twenty-three cents with interest from the 1st of December, 1871, at the agreed rate of ten per cent. from said 1st of December until paid; and that, by said mortgage, Lockett had the right to sell the land therein conveyed, but the present not being considered a judicious time to make the sale, it is agreed that Lockett shall take possession of said property, real and personal, and shall have the right to rent the

plantation and the personal property in terms this day agreed upon between Lockett and one John La Roque, and that the rent shall be applied to the extinguishment of the debt due by Hill to Lockett; and that during the ensuing year (1872), Lockett shall have the right to sell all of the property, both real and personal, mentioned in said mortgage, consisting of the lands mentioned in the mortgage and personal property, this day turned over to La Roque, and apply the proceeds. firstly. to the balance due on the debt above mentioned in this agreement, and secondly, to the payment of the Ketchum & Hartridge draft (provided this draft has to be paid), and Lockett is appointed attorney in fact for Hill, with full power and authority to act as his attorney in fact and to make all needful conveyances.

On the 24th of October, 1873, Hill wrote Lockett that as he was unable to pay him, he might take all the stock, etc., on the land ("all of which is mortgaged to you") at a fair valuation, and credit the same on the debts. There is no evidence that this offer was accepted or rejected. Much was said during the argument as to whether Lockett ever took actual possession of the land and personal property. The evidence read is conflicting. It was, however, agreed by the instrument of December 20, 1871, that Lockett "shall take possession of the said property, real and personal, and shall have the right to rent and hire," etc. By a writing dated December 20, 1871, Lockett rented the "plantation of D. P. Hill," and the personal property thereon, for the year 1872, to La Roque for forty bales of cotton, to be raised on the place and delivered to him. One Blake filed an affidavit stating that he rented the plantation from Lockett for 1873, and paid him the rent, and regarded Lockett as the lawful owner and possessor of said plantation, and held the same as his tenant, and upon delivering the possession to Lockett, he put one White in possession. But he does not positively state that Lockett was at any time in actual possession of the land, and he makes no mention whatever of the personal property. Mr. Ely, solicitor and counsel for Lockett in this cause, swears that he was present on the plantation of D. P. Hill on the 20th of December, 1871, and that in his presence Hill delivered the possession of the plantation to Lockett, and all the personal property thereon. The bankrupt in his answer, read as an affidavit, denies that he ever, at any time, turned over the possession of the plantation and personal property to Lockett, but simply authorized him to exercise a supervisory control over the same, in order to protect and further defendant's interests in the way of making crops. He also denies that Lockett rented out the property for 1872 or 1873, but, on the contrary, he says that he rented out the plantation, stock, etc., to La Roque for forty bales of cotton for the rent; but intending that Lock-

ett should have the rents and profits, he caused La Roque to execute the contract with Lockett instead of with himself. He further says that Lockett never gave him (Hill) leave to rent the place for 1873 to Blake, as his (Lockett's) agent; but that he himself rented it to Blake, without obtaining the consent of any one, except that of Blake; but let Lockett collect and retain the rents due by Blake for 1873.

On the 3d of December, 1873, Hill filed his petition in bankruptcy, and was adjudged a bankrupt by Register Black. On the 9th Lockett was, on petition of the bankrupt, restrained from selling the mules. wagons, etc., enumerated in the mortgage; and Edward F. Hoge was appointed assignee of Hill on the 20th; but on the 13th, intermediate the filing the petition in bankruptcy and the appointment of the assignee, Lockett sold the land, in fee, to Rust. Johnson & Co. (the mortgagee himself being the company), for $4,875, by a warranty deed, executed in the name of Hill, the mortgagor and bankrupt. The deed of conveyance is signed and sealed as follows: "D. P. Hill, (L. S.) by B. G. Lockett, attorney in fact." Hill. in his answer, swears that this land cost him $16,225 before the war. On the 2d of January, 1874, Lockett instituted the present suit, and by consent, the court granted an order restraining the assignee from selling the personal property until argument could be had on the prayer for injunction. etc. Lockett, by counsel, insisted that by virtue of the power of sale. inserted in the mortgage of January 16. 1871, and in the power of sale in the agreement of December 20, 1871, and by the power of attorney contained in each of these instruments, appointing him attorney in fact to sell, convey and make all needful conveyances, and by the authority given him in the latter instrument to take possession of all the mortgaged property, real and personal. he had a power coupled with an interest, and therefore a perfect right to convey the fee as he had done, and authority to make an absolute sale of the personal property notwithstanding Hill was then a declared bankrupt; and that no part of this property. real or personal, is assets of the bankrupt's estate.

On the part of the assignee it was contended that all said real and personal property is assets of Hill's estate, and that it passed to him by deed of assignment for distribution among the creditors of the bankrupt, under the bankrupt act of 1867 and its amendments. And for the bankrupt it was urged that he, being the head of a family, is under the first section of the seventh article of the state constitution of 1868, and the state law of the same year (Code. § 2002), entitled to a homestead in said mortgaged land to the value of $2,000 in specie, and exemption in the personal property to the value of $1,000 in specie.

It is a rule too well settled to need the citation of authorities, that a collateral pow-

er, although in many instances irrevocable by the principal, expires with his life or bankruptcy, but it is otherwise when the authority or power is coupled with an interest; for in the latter case it is not extinguished by the death or bankruptcy of the appointor; it survives and may, as a general rule, be executed in the name of the person in whom it was placed. Venerable authority on questions of this nature says that if a person clothed with a power hath at the same time an estate in the land, the power is not collateral because it savors of the land. Hardr. 415. And the supreme court of the United States, by Chief Justice Marshall, in Hunt v. Rousmanier, 8 Wheat. [21 U. S.] 203, said: "What is meant by the expression 'a power coupled with an interest?' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear that the interest which can protect a power after the death of a person who creates it must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing."

Does the power now in question answer the definition given in Hardres, or the equally accurate description given by the supreme court? Had Lockett, at the time when the power was executed, a vested interest or estate in the mortgaged property? Was the power conferred conjoined with an estate, held by Lockett, in the thing itself? "A mortgage in this state is only a security for a debt, and passes no title." Code, § 1954. Avoiding unessential matters as far as may be, and matters collateral to the questions for decision, I will quote from or refer to the construction given to this statute by the state supreme court, as found in the reports. In Davis v. Anderson, 1 Kelly, 176, Warner, J., in delivering the opinion of the court, said that "a mortgage in this state is nothing more than a security for the payment of the debt; and the title to the mortgaged property remains in the mortgagor until foreclosure and sale, in a manner pointed out by the statute." * * * "Under our law the legal title to the mortgaged property remains in the mortgagor until after foreclosure and sale." And the interpretation given by that learned judge has been followed from that day to this. See the reports, passim. In Scott v. Warren, 21 Ga. 408, McDonald, J., said: "In England and in some of the states of the Union, when the condition is broken, the estate is so absolutely vested in the mortgagee that he may maintain ejectment and recover the premises. This is not the case here. In this state a mortgage in its inception is nothing more than a security for the payment of money, and it so continues to be, and nothing more, after the breach of the condition; therefore, creates a lien only, and not an estate." And this court, in U. S. v. Athens Armory, April term. 1868 [Case No. 14,473], said: "A mortgage in Georgia is only a security for the debt; the title to the property remains in the mortgagor." This is fully settled as a rule of property by a series of state adjudications, and when such is the case the federal courts adopt the decisions of the state courts.

It has been nearly a century and a half, if my researches are correct, since powers of sale, in conveyances in mortgage, were first known to the courts in England. And notwithstanding their validity has been supported in courts of equity, and they have at least impliedly become a part of the jurisprudence of that country, yet as late as 1825, Lord Chancellor Eldon, in Roberts v. Bozon, mentioned in 1 Pow. Mortg., 9, 13, characterized them as extraordinary and of a dangerous nature.

The first reported case in our own country, which I have been able to find on this subject, is Bergen v. Bennett, 1 Caines, Cas. 19. This is a bill to redeem on the ground that the power to sell, contained in the conveyance in mortgage, became extinct on the death of the mortgagor. The court for the correction of errors held that the authority to sell was a power coupled with an interest, and dismissed the bill. I will quote portions of the language used by Kent, J., who gave the opinion of the court, and which embody the principal reasons for holding that the power in the mortgage was a power coupled with an interest: "But when power is given to a person who derives under the instrument creating the power, or otherwise, a present or future interest in the land, it is then a power relating to the land. * * * The power now in question answers exactly to this definition (Hardr. 415) of a power with an interest, because the mortgagee has, at the same time, a vested estate in the land, and it does not answer at all to the definition of a power simply collateral; for that is but a bare authority to a stranger, who has not, and never had, any estate whatever." Wilson v. Troup, 2 Cow. 195. This was also a bill to redeem. It was held by the court, as had previously been done in Bergen v. Bennett, supra, and Wilson v. Troup, 7 Johns. Ch. 25. that a power of sale contained in a mortgage is a power with an interest. And the court of errors intimated the opinion that a power of sale inserted in a mortgage was in the nature of a power appendant to the land. A power appendant is where a person has an estate in the land, and the estate to be created by the power is to, or may, take effect in possession during the continuance of the estate to which the power is annexed; as a power to tenant for life, in possession to make leases. Co. Litt. 342b, notes 2, 8, 9 (Harg. & B.). And Sutherland, J., in Wilson v. Troup, 2 Cow. 195, said: "Now, the power of a mortgagee to sell is a power to create or acquire to himself the equitable estate in the land during the continuance of the legal estate conveyed to him by the mortgage."

The validity of the clause of a power of sale inserted in a mortgage has been, as already remarked, established in the courts of chancery at Westminster (Coote, Mortg. 128 et seq.) and also in New York, and indeed in nearly all the states. In New York and in other states the mode of enforcing these power of sale mortgages is in a greater or less degree guarded by statutes, against irregularity and abuse. Such enactments are highly commendable, for it may be borne in mind that the mortgagee holds the antagonistic and anomalous position of creditor and trustee united in himself, and it must often transpire that the time, the place and the manner of selling will present questions of difficulty and importance to the parties. In New York, for example, there must be six months' notice in the Public Gazette before the mortgagee can sell under the power of sale. See Jackson v. Lamson, 17 Johns. 300. With these remarks, I will proceed to ascertain whether, under the statute law of this state, and the construction which it has uniformly received by the state supreme court, a power of sale contained in a conveyance in mortgage, executed in this state, is a power coupled with an interest. Directing attention to the cases which have been cited on the subject of a power of sale in a conveyance in mortgage, it will readily be perceived that the decisions of the courts of England and New York, founded on the legal fact that to create a power combined with an interest, the donee must have at the time of the creation of the power a vested estate in the land or thing. Such power may be classed as an appendancy, and the power must have an estate to conjoin with it and nourish it. When this is not the case, the power is simply collateral and ends, at farthest, with the life or bankruptcy of the donor.

In England and in several of the states, including New York (and in the latter state at least where the decisions above noted were made), ejectment may be maintained by the mortgagee against the mortgagor on his failure to pay the money at the time stipulated. Whereas, in Georgia, no ejectment or other possessory action on breach of the condition by the mortgagor has been recognized as a part of its jurisprudence. The rule of evidence is, that the plaintiff in ejectment must succeed, if at all, on the strength of his own title, and not on the infirmity of the claim of the defendant. So, too, the claimant, to support his action of ejectment, must be clothed with the legal title to the lands. In Reed v. Shepley, 6 Vt. 602, it was resolved that in an ejectment a mortgagor cannot dispute the title of the mortgagee. Thus, in England and in New York and other states of the Union, upon the delivery of the ordinary conveyance in mortgage, an estate or interest passes to and vests in the mortgagee, and such estate being then vested in him, it is sufficient in law upon which to raise a power coupled with an interest; and

the estate or interest in the land or thing being in the mortgagee at the time he is clothed with the authority, the estate supports the power and they stand united.

So far as my information extends, the common law doctrine, even in its modern and modified form, in relation to conveyances in mortgage, has never met the sanction of the supreme court of this state. Here the rights of parties to these securities for debts, from beginning to end, are regulated and enforced solely by the principles of equity; the very language of the statute is the rule in equity. "A mortgage," says the Code (section 1954), "in this state is only a security for a debt and passes no title." As already observed, the state supreme court, in Davis v. Anderson, supra, said that the title remains in the mortgagor until foreclosure and sale in the manner pointed out by the statute. And McDonald, J., in Scott v. Warren, supra, said: "Here a mortgage in its inception is nothing more than a security for the payment of the money, and it so continues to be, and nothing more, after the breach of the condition. The mortgage, therefore, creates a lien only and not an estate; and the mortgagee in relation to the mortgaged property stands on the same footing as any other creditor." And this view of the law of mortgages in Georgia was approved by Lumpkin, J., in delivering the opinion of the court in Elfe v. Cole, 26 Ga. 197.

Numerous other cases, containing like views, might be cited, but it is deemed unnecessary to do so. Counsel for complainant read the case of Robenson v. Vason, 37 Ga. 66, as affirming and adopting as a rule of decision the doctrine of the courts in Westminster and New York. In Robenson v. Vason [supra], the main question before the court was, whether an injunction which had been granted at the instance of the mortgagor to restrain an innocent assignee of the notes and mortgage from selling the property under a power of sale, given to the mortgagee, his heirs and assigns, was properly dissolved? Warner, C. J., for the court, held that it was. The chief justice, in the latter part of his opinion, said: "As a general proposition the power to mortgage would seem to include in it a power to authorize the mortgagee to sell in default of payment. Wilson v. Troup, 7 Johns. Ch. 32. In this case there is an express power given by the mortgagor to the mortgagee or his assigns to sell the mortgaged property on default of payment upon giving thirty days' notice." I have perused the extended statement of the case made by the reporter, and have not discovered one word in it, nor in the opinion of Chief Justice Warner, which says or indicates, in the remotest manner, that the authority to sell was a power connected with an interest, and I respectfully hazard the remark that under the facts of that case, as they appear in the report, it could not be a point for decision. The mortgagor was before the court in pro-

pria persona, and not a declared bankrupt. But notwithstanding the power from the mortgagor to the mortgagee and his assigns was not coupled with an interest, yet it may have been, and probably was, given for a valuable consideration, and consequently, in contemplation of law, irrevocable, but would cease with the life or bankruptcy of the mortgagor. Walsh v. Whitcomb, 2 Esp. 565; Hunt v. Rousmanier, supra. "These powers are not ordinary powers operating by means of limitation or use, but trusts declared on the legal estate in the mortgagee." Hil. Mortg. (3d Ed.) 138.

I am of opinion that the power of sale contained in the mortgage, or that inserted in the agreement of December 20, 1871, was not, in either instance, under the statute laws of this state or the decisions of the state supreme court, that power which is known in legal language as a "power coupled with an interest." Adverting to the synopsis of the bill, etc., in a former part of this opinion, in which is embodied the substance of the mortgage of January 16, 1871, and agreement of December 20, 1871, it will be seen that the authority to foreclose, as to the personal property, on default of payment was given to Rust & Son or to Lockett; and the power to foreclose as to the land, or to sell it if the condition was broken, was given to Lockett. It will be remembered that the mortgage conferred no power to sell the personal property; that authority was given by the agreement. If the authority inserted in the mortgage was a power combined with an interest, it must have been based upon a vested estate in Lockett. He did not foreclose the mortgage upon either the personal or real property, or sell the land after the first of October, 1871 (and which act a proviso in the mortgage authorized him to do if Hill did not pay the money at the time appointed), or before the 20th of December, 1871, on which day the "agreement" was executed. This instrument says Lockett shall take possession of the land and personal property mentioned in the mortgage and rent the same to La Roque, "on terms this day agreed upon between Lockett and La Roque," and it is also stipulated that Lockett "shall have the right during the ensuing year (1872) to sell all of the real and personal property this day turned over to La Roque." If the power in the mortgage to sell the land after the first of October, should the debts not then be paid, was a power linked with an interest, regranting it by the agreement of December 20, 1871, was notional and superfluous, unless it had previously become extinct by efflux of time or otherwise, and the language of the agreement does seem to indicate that it had at that period been extinguished. As just mentioned, it is provided in the agreement that Lockett shall take possession of the mortgaged property, real and personal, and rent and hire the same to La Roque. and Lockett is given the right, during the ensuing year, to sell all of said land and personal property.

Courts disregard fractions or divisions of a day unless it be necessary to ascertain which of two events first happened. And I think it is proper to apply the exception here. It is plain, from the language used in the agreement, that Lockett, before the execution of the agreement, had agreed to rent and hire the mortgaged property to La Roque, and that it had been turned over to him—transferred; these were accomplished facts, effected anterior in time to the delivery of the agreement, though done on the same day. The words are not that Lockett is in possession, but that he shall take possession, etc. In the contract of lease for the mortgaged property made between Lockett and La Roque, it is rented for the ensuing year, 1872, as the "plantation of D. P. Hill." La Roque acknowledges himself as the tenant of Lockett, and signs the lease; Lockett does not sign it. Ely, in his affidavit, says that Hill, on the 20th of December, 1871, delivered the possession of the plantation and all the personal property thereon to Lockett. Hill swears that he never did turn over the possession to Lockett. If the possession was turned over to Lockett on that day—and I express no opinion on the weight of the evidence—the conclusion is that it must have been subsequent, in time, to the execution of the agreement, and consequently after the property had been turned over to La Roque, the lessee. The agreement provides that "Lockett shall have the right during the ensuing year" (1872) "to sell all the real and personal property this day turned over to La Roque." And Hill bestows on Lockett full power to act as his attorney, and to make all needful conveyances. No time was specified in the agreement for the termination of the possession; therefore the law of this state construes it to be for a calendar year. Code, § 2290. The agreement, as mentioned already, gave him the right during the ensuing year to sell all the real and personal property turned over to La Roque. This power he did not execute during 1872. And, as he must have known the certainty of his own term, he ought to have availed himself of his power to sell the property indicated in the agreement during its continuance; and whether the right to sell within the time named was a naked authority, revocable at the pleasure of the principal, or was a power irrevocable by the grantor, and consequently current until his bankruptcy, or a power coupled with an interest, is here an inquiry of no legal consequence. The right to sell the entire property during the ensuing year was suspended by Lockett beyond the limitation clause in the agreement, and being once suspended by his own voluntary act, it is, in my judgment, gone forever. But as the power of sale was

merely cumulative, it would not bar a foreclosure. Furbish v. Sears [Case No. 5,160]. "If a man grant all his trees to be taken within five years, the grantee cannot take any after the expiration of five years; for this is in the nature of a condition annexed to the grant." Moore, 882.

Lockett alleges that Hill, as his agent, rented the property to Blake for the year 1873. Hill says he rented it to Blake himself, but allowed Lockett to receive the rent, to be applied in discharge of the debt due him. Blake avers that he rented the plantation from Lockett for 1873, paid him the rent and surrendered the place to him, and he put White in possession. Lockett says he has been in possession of all the mortgaged property from the 20th December, 1871, until he sold the land, shortly after the bankruptcy of the mortgagor, and is still (2d January, 1874) in possession of the personal property. Let it be conceded that Lockett was in possession, though there is no evidence in the record that Hill rented him the property for 1873, so then he must have been in as a tenant at will or at sufferance. The possession as a tenant at will, or at sufferance, would not be of that dignity and nature which could be engrafted on a power in a mortgage in fee so as to make it a power coupled with an interest; it would not bring the power within the definition given in Hardres, or by Chief Justice Marshall, of a power coupled with an interest.

If the power of sale given to Lockett was what I have ruled it to be, a collateral power, then it became extinct, at farthest, on the bankruptcy of Hill, nine or ten days prior to the sale of the land by Lockett. But if it was really a power united with an interest, then it survived his bankruptcy, and Lockett could (were it not for reasons which will be explained presently) have conveyed the property in his own name, but not, as he adventured to do, in the name of Hill, who was at the time civiliter mortuus—at least he was incapable in law to execute a deed of conveyance. And assuming the power conferred to be of the latter kind, still Lockett could not purchase this land himself, either in severalty, joint tenancy, or otherwise; he could not be vendor and vendee; the characters are inconsistent. Michoud v: Girod, 4 How. [45 U. S.] 502; Griffin v. Marine Co., 52 Ill. 130.

The remaining question which I shall now consider—and it is a question of importance in this case—springs from the record. Let the fact be yielded that the power granted by Hill, the mortgagor, to Lockett, the mortgagee, was a power connected with an interest, and consequently not revoked by the bankruptcy of Hill, nor shall I presume it to have been lost previously by the laches of Lockett, the donee, in not selling the property within the time limited,

could he, by virtue of such power of sale, convey the land to himself or any one else, after Hill had been adjudged a bankrupt under the provisions of the bankrupt act of 1867, unless the sale was made by the order and authority of the district court? Now, although Lockett may have, by a clause in the mortgage or agreement, received a power coupled with an interest, yet, after all, he would be but a trustee for Hill, the mortgagor, his heirs or assigns; for neither the mortgage, the agreement, nor the power (even if coupled with interest) invested him with an absolute and indefeasible estate in the property which is the subject of this controversy; and as agent or trustee for the mortgagor, his heirs, etc., a court of chancery could compel him to account for the rents and other fruits of the mortgaged property. Did the bankruptcy of Hill discharge or in any manner lessen the responsibility of Lockett as trustee? Surely not. True, when Hill became a bankrupt, Lockett was no longer liable to account directly to him; for the moment he filed his petition in the district court under the bankrupt act, all his estate, of every kind and description, in possession or in action, came by the mere operation of the bankrupt law into the possession of that court, and under its immediate control; and no state court, nor person can interfere with the possession except by permission of this court. In re Steadman [Case No. 13,330]. It is declared by the first section of the bankrupt act, that the jurisdiction of the United States district courts, acting as courts of bankruptcy, shall extend "to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; and to the marshaling and disposition of the different funds and assets, so as to secure the rights of all parties and due distribution of the assets among all the creditors." Thus it will be seen that the congress of the United States has conferred on the bankruptcy courts a broad and comprehensive authority, sufficiently extensive for those courts to entertain jurisdiction over the respective rights of the parties in and to the property, real and personal, which was mortgaged by Hill to Lockett, and to cause it to be administered in accordance with the bankrupt law. Hill, the bankrupt, appears on the face of the bill as a party defendant; but whether he is a proper party need not now be inquired into; he appeared and responded to the allegations and charges in the bill.

The prayer for the writ of injunction is refused; and the order previously granted

restraining the assignee from selling the personal property is hereby set aside. Ordered accordingly.