### JOHNSON v. JOHNSON.

1. In action for the recovery of the possession of real property, the plaintiff can recover only the strength of his own title as it existed at the time of action brought.

2. Where the mortgagor empowers his mortgagee on default to make sale of the mortgaged lands, the courts will not avoid the power, but will closely scrutinize the sale made thereunder.

3. Where sale is made by the mortgagee or his assigns under a power conferred in the mortgage deed, the legal title remains in the mortgagor until deed of conveyance is executed under the power by the mortgagee or his assigns, in the name of the mortgagor. A deed in the name of the mortgagee or his assigns will not transfer the title.

4. Such a power, being a part of the contract and based on a valuable consideration, cannot be revoked by the mortgagor, but the power not being coupled with an interest ceases at the instant of the mortgagor's death, and cannot be thereafter executed.

5. An action for the recovery of real property claimed by plaintiff to have been purchased by her under a power contained in a mortgage deed, cannot be converted into an action for a foreclosure of the said mortgage.

Before ALDRICH, J., Laurens, March, 1887.

The opinion fully states the case.

*Messrs. Holmes & Simpson,* for appellants.

*Messrs. Cuningham & Harris,* contra.

October 6, 1887. The opinion of the court was delivered by MR. JUSTICE McGOWAN. On November 17, 1879, one Joshua M. Johnson, in order to secure a note for $150, due to John H. Neighbors, executed to him a mortgage of a tract of land, containing 114 acres, and Louisa Johnson, the wife of the said mortgagor, relinquished her dower in the said premises. The mortgage contained a power of sale as follows: "But in case of the non-payment of the said sum, &c., . * * * then, and in such case, it shall and may be lawful for the said John H. Neighbors, his heirs, executors, administrators, and assigns, and the said Joshua M. Johnson doth hereby empower and authorize the said John H. Neighbors, his heirs, executors, administrators, or assigns, to grant, bargain, sell, release, and convey the said premises, with the appurtenances, at public auction or vendue, at which sale they, or any of them, shall have the right to become purchasers of the said premises, and on such sale to make and execute to the purchaser or purchasers his, her, or their heirs or assigns forever, a conveyance in fee of the said premises, free and discharged from all equity of redemption, right of dower, and every other encumbrance," &c., &c. On January 6, 1881, the mortgagee, Neighbors, assigned the note and mortgage to the plaintiff, Margaret Johnson, and in the year 1882 Joshua M. Johnson, the mortgagor, died intestate, seized and possessed of

the said premises; leaving as his heirs at law, his widow, Louisa Johnson, and five minor children, who are the defendants.

On December 22, 1883, after the death of the mortgagor, Margaret Johnson, the assignee of the note and mortgage, advertised the land for sale in the town of Clinton, County of Laurens, at 12 o'clock m., of January 12, 1884, by posting written notices of the sale on the door of the court house, and at three other public places of the county. This advertisement made no reference to the previous death of the mortgagor, Joshua M. Johnson, or mention of his widow and children, his heirs at law. At the sale, the land was bid off by one Pitts for $325, who refused to comply with the terms of sale, and James L. Simpson agreeing to take his bid, on January 24, 1884, a deed was made to him by the plaintiff in her own name, without any reference to the previous death of Joshua M. Johnson, the mortgagor, or mention of his heirs, the widow and children. This deed was recorded. It seems that the sale was reasonably well attended, the widow, Louisa Johnson, with others, being present; and that the land sold for what was considered a fair price. Simpson agreed with the widow, Louisa, that she might remain on the land for the remainder of the year for a certain rent.

Simpson, to whom the land was conveyed, never paid the purchase money, but on January 5, 1885, in pursuance of a previous agreement to that effect, conveyed it back to Margaret Johnson, who credited $195.90, the amount due on the mortgage debt owned by her as assignee, and brought this action against the heirs at law of the deceased mortgagor, Joshua M. Johnson : 1. To confirm the sale and conveyance made by her as assignee. 2. For leave to pay into court the excess of the purchase money over the mortgage debt. And 3. That the plaintiff may be put into possession of the said premises, and for the costs of the action, &c. The minor defendants made formal answer, but the widow, Louisa Johnson, answered, resisting the claim, upon the ground that she and her children were in possession as the heirs at law of the mortgagor; and that they were never made parties to any proceeding of foreclosure, so as to divest them of the legal title; and the plaintiff, Margaret Johnson, has no title under the illegal and void sale by her, and that her action should be dismissed.

The cause was referred to the master, C. D. Barksdale, Esq., "to ascertain and report on all the issues of law and fact involved." He took the testimony, which is in the Brief, recommended that the prayer of the complaint should be granted; and his honor, Judge Aldrich, confirmed the report. From this decree the defendants appeal to this court upon the following grounds :

"1. Because his honor erred in holding that the advertisement for sale was sufficient, and that the sale was valid.

"2. Because he erred in not holding that the parties having the equity of redemption, should have been named in the advertisement of sale.

"3. Because he erred in not holding that the sale, under power to sell in a mortgage at public auction or vendue, should conform to public sales, when made under foreclosure of mortgage by order of court.

"4. Because he erred in holding that the land sold for a fair price.

"5. Because he erred in not holding that the sale was invalid, because the person who bid off the land refused to comply, and the person to whom the deed was claimed to have been executed never complied nor paid the purchase money, which, in fact, has never been paid.

"6. Because he erred in not excluding parol testimony to establish the transfer of the bid of John H. Pitts to James L. Simpson ; and also in not holding that there was no legal transfer made under the statute of frauds.

"7. Because he erred in not holding that the execution of the deed from Margaret Johnson to James L. Simpson was not proved, and in not excluding the testimony taken before trial justice Irby.

"8. Because he erred in not holding that the deed of Margaret Johnson to James L. Simpson was invalid, because executed in the name of the mortgagee, when it ought to have been executed by the mortgagee, as attorney in fact, in the name of the parties in whom was the legal title.

"9. Because the mortgagor having died, he erred in not holding that the mortgagee, under the terms of the mortgage, had no

right to sell and bar the rights of the infant defendants, heirs at law, and others, creditors, without a regular foreclosure by order of court.

"10. Because he erred in holding that Louisa Johnson was estopped from denying the validity of the sale by her presence at the sale, or by undertaking to rent, if the deed was afterwards improperly executed, and she was ignorant of her rights and mistaken as to her remedy.

"11. Because he erred in not holding that the minor defendants were not estopped by the acts of Louisa Johnson."

As we understand it, this is an action for the recovery of real estate upon title claimed to arise out of a sale made under a power contained in a mortgage; but if it should be found that said sale was irregular, and the title thereby acquired defective, then incidentally to cure the defect and validate the title. It is familiar doctrine that in an action for the recovery of the possession of real estate, the plaintiff must recover upon the strength of his own title, considered with reference to the time the action was brought. If the title was then perfect, no confirmation is necessary ; but if it was then imperfect, we do not clearly see how the court can, by subsequent proceedings, so validate it as to affect retrospectively the right existing when the suit was brought. See *Moon* v. *Johnson*, 14 *S. C.*, 434.

It has always seemed to us somewhat anomalous doctrine, that a mortgagor of real estate may include in the mortgage a power to the creditor himself to sell the mortgaged premises without any order of foreclosure in a regular proceeding, such power being entirely *ex parte*, and carrying, as claimed, not only the right to ascertain the amount due on the mortgage debt, but to judge of the necessity for a sale, its time, place, terms, &c., and to execute title to the premises so sold. This anomaly is more striking in those States, as in South Carolina, where it is expressly provided by statute that a mortgage of real estate is a mere security, and even after condition broken, the legal title remains in the mortgagor or his heirs. We incline to think that experience in the administration of the law has shown that this effort by a summary proceeding to avoid litigation and expense, has really increased both, and demonstrated the wisdom of Lord

Eldon, when he said: "How can it be right that such a clause shall be inserted in a deed under· which a party is trustee for himself? * * * Here, too, it must be recollected that this is a clause to be acted upon—not by a middle person, who is to do his duty between the *cestuis que trust*—but the mortgagee is himself made trustee to do all these acts." The same learned chancellor, however, said at the same time: "But it is too much to say that if the one party has so much confidence in the other as to accede to such an arrangement, this court is, for that reason, to impeach the transaction," &c.

While, however, the court will not now set aside a power authorizing the creditor, who is the interested party, to sell lands mortgaged, for the reason that it is the contract of the parties themselves, yet all the authorities agree that "as such power may be so easily used for purposes of oppression, the courts should scrutinize sales made under them very closely." *Robinson* v. *Amateur Association*, 14 *S. C.*, 148. From the view the court takes, it will not be necessary in this case to consider whether the power of sale went with the mortgage to the assignee, Margaret Johnson, nor whether the mode of conducting the sale should have been conformed, as far as possible, to that of ordinary judicial sales, nor whether the vendor, Margaret Johnson, when Pitts failed to comply with the terms of sale, had the right to substitute for him as the last bidder Simpson, and without any consideration paid, to accept from him a conveyance for the premises sold. This circuity of conveyance was manifestly designed as the means of carrying back the title to Margaret Johnson, the vendor, and must be considered as substantially the same as if Margaret Johnson, the assignee and vendor, had bid off the property at her own sale, and then in her own name conveyed it directly to herself.

The main question is, whether after the death of the mortgagor, Joshua M. Johnson, leaving his widow and children in possession of the premises, the mortgaged premises could be sold and conveyed by Margaret Johnson in her own name, without any reference whatever to the death of the mortgagor or his heirs at law, some of whom were infants. This must, to a large extent, depend upon the determination as to whose the legal

estate was at the time of the death of the mortgagor. There cannot be the slightest doubt that, at the time of the death of the mortgagor (so far as the mortgage itself was concerned), the title was in the mortgagor, and at his death descended to his heirs. It is true that, according to the common law, a mortgage was a "conveyance of an estate by way of pledge for the security of a debt, and to become void upon the payment of it." But it is quite as clear that in our State, by the act of 1791 (now embodied in section 2299 of the General Statutes), the legal title, upon the execution of a mortgage, remains in the mortgagor, and "the mortgagee shall not be entitled to maintain any possessory action for the real estate mortgaged even after the time allotted for the payment of the money secured; but the mortgagor shall be deemed owner of the land, and the mortgagee as owner of the money lent or due; and shall be entitled to recover satisfaction for the same out of the land by foreclosure and sale according to law." See *Simons* v. *Bryce*, 10 *S. C.*, 368; and *Warren* v. *Raymond*, 17 *S. C.*, 163.

It is, however, contended that the power of sale clause in the mortgage had the effect of conveying the legal title away from the mortgagor and his heirs. We confess we cannot so see it. The important words are: "And the said Joshua M. Johnson doth hereby empower and authorize the said John H. Neighbors, &c., to grant, bargain, sell, release, and convey the said premises, &c., at public auction or vendue; at which sale they or any of them shall have the right to become purchasers of the said premises, and on such sale to make and execute to the purchaser or purchasers a conveyance in fee of the said premises, free and discharged from all equity of redemption," &c. We see here no terms of transfer, conveyance, or assignment, but the words *"empower and authorize"* are those appropriate in a power of attorney, as to which the attorney acts in the name and for the benefit of the principal creating the power. It seems that there is such a thing as a trust deed of land as a security, providing that the land shall be sold by the trustee and the proceeds applied to the debt. But, as we understand it, such deeds differ essentially from a mere power of sale; they do in terms carry the legal title of the property to the trustee to be sold and applied by him as a personal trust and

confidence, which cannot be delegated except as provided by the person who created the trust.    See 2 *Jones Mort.*, § 1788.

. As we have seen that the clause in question did not transfer the title which remained in the mortgagor, but only gave a power of sale, that power assuredly could only be executed in the name of the principal.    *Webster* v. *Brown*, 2 *S. C.*, 429; *De Walt* v. *Kinard*, 19 *Id.*, 292.    It is said, however, that Margaret Johnson did not execute the deed in the name of the principal, Joshua M. Johnson, for the very good reason that at the time of the sale he was dead, and most of his heirs, to whom the title had descended, were infants and incapable of conveying the title.

This fact suggests another difficulty in the way of the plaintiff's recovery on her own title.    We think that the power of sale given by Joshua M. Johnson was revoked by his death; and if so, of course, it was incapable of execution.    The power of one man to act for another must depend on the will of that other, and when it is withdrawn the power ceases.    As the power of sale in this case formed a part of a contract for consideration, it may be conceded that it could not have been revoked in the lifetime of the creator of it; but, nevertheless, we think it was revoked by his death.    It certainly was, unless it belonged to that exceptional class where the "power is coupled with an interest." *Hunt* v. *Rousmanier's Adm'n'rs*, 8 *Wheat.*, 205; *Lockett* v. *Hill*, 1 *Woods,* 558, and cases there cited.    Was the power here, in the sense of the rule, "coupled with an interest"?

I freely confess that the phrase, "a power coupled with an interest," never seemed to me to convey a very clear and definite idea.    I am content to adopt the views of Chief Justice Marshall upon the subject, as expressed in the case from Wheaton above cited, where he says: "What is meant by the expression, 'a power coupled with an interest'?    Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power?    We hold it to be clear that the 'interest' which protects a power after the death of the person who creates it, must be an interest in the thing itself.    In other words, the power must be engrafted on an estate in the thing.    If we are to understand by the word 'interest' an interest in that which is to be produced by the execution

of the power, then they are never united; the power, to produce the interest, must be exercised, and by its exercise is extinguished. The power ceases when the interest commences, and therefore cannot, in accurate law language, be said to be 'coupled' with it. But the substantial basis of the opinion of the court on this subject is found in the legal reason of the principle. The interest or title in the thing being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. The act of the substitute, therefore, which in such a case is the act of the principal, to be legally effectual, must be in his name— must be such an act as the principal himself would be capable of performing, and which would be valid if performed by him. Such a power necessarily ceases with the life of the person making it," &c.

We are aware that Mr. Jones (2 Mortgages, section 1794) has expressed the opinion that "the rule is the same in those States where, by statute or adjudication, a mortgage is regarded as a mere security for debt, passing no title or estate to the mortgagee; the power of sale is coupled with an interest, and is irrevocable, just the same as it is where the common law doctrine, that the mortgage conveys the legal estate, still prevails"—and cites as authority for the proposition the case of *Calloway* v. *People's Bank of Bellefontaine*, 54 *Ga.*, 441. But as the learned author in the same book repeatedly declares that the deed of sale under the power should be made by the holder of the legal title, we must suppose that he failed to note clearly the great difference as to title between a common law mortgage and one executed under a statute such as that in this State.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit, with leave to the plaintiff to move to amend her complaint so as to pray for a regular judicial foreclosure of her mortgage.

Upon this opinion the Chief Justice and Mr. Justice McIver made the following endorsement:

We concur in so much of this judgment as reverses the judgment of the Circuit Court; but we do not concur in so much of

the judgment as allows the plaintiff leave to amend, for the reason that, in our opinion, such an amendment as that contemplated would change substantially the claim of the plaintiff and cannot be allowed under section 194 of the Code.