WILKINS, next friend, *et al. v.* McGEHEE.

1. A power given by mortgage to sell the land covered thereby for indemnity to the mortgagee, if she had to pay a note of previous date on which she was security for the mortgagor, was revoked by the mortgagor's death before the note fell due. It follows that a sale of the land under that power, made after the death of the mortgagor, was void and conveyed no title to the purchaser.

2. The mortgagor's executors (who sue as such, and also as trustees under the will of the mortgagor, and as next friend of a minor beneficiary) are not estopped from contesting the validity of the sale, they having been present thereat but having done or said nothing in regard to the matter, and having made no representation as to the title or the right of the mortgagee to sell, and the purchaser being the mortgagee's son and agent who advertised the land for sale and who had as much knowledge of the state of the title as the plaintiffs, and all parties having acted in good faith under the belief that the power of sale was still valid when the sale occurred. Any doubt of this conclusion would be overcome by considering the difference between estopping one who acts as an individual and one who acts in a representative capacity.

(a) It is not held that the purchaser has no remedy. He can still set up his mortgage by way of cross-bill to the action of ejectment, have the mortgage foreclosed and the land sold, and be paid the amount due on the mortgage with interest.

March 4, 1891. Argued at the last term.

Ejectment. Sales. Powers. Revocation. Title. Mortgages. Estoppel. Administrators and executors. Before Judge SMITH. Muscogee superior court. May term, 1890.

Action of ejectment on the demises of C. B. Wilkins as next friend of Georgia M. Wilkins, of C. B. Wilkins and John Flournoy as trustees of Georgia M. under the will of Julia M. Wilkins, and of Wilkins and Flournoy as executors of Julia M. Wilkins. Julia M. Wilkins originally had title to the property and died in possession of it, leaving a child, Georgia M., and a will in which no specific mention was made of the property, but in which Wilkins, Flournoy and Swift, in trust for her daughter, were named as residuary lega-

tees and powers given them as to sale, exchange and reinvestment of property bequeathed to the daughter. Wilkins, Flournoy and Swift were also named as executors. Before her death Mrs. Wilkins and her grandmother, Mrs. Mustian, executed a note for $4,095, and a few days' thereafter Mrs. Wilkins entered into a writing reciting that, in consideration of the fact that Mrs. Mustian had endorsed the note for her, she sold to Mrs. Mustian the property in dispute, upon the condition that if she, Mrs Wilkins, paid or caused to be paid the note in full when it became due, then this conveyance was to be null and void; that if she should fail to do so and Mrs. Mustian should pay it, then Mrs. Mustian was authorized to enter upon and take possession of the property, and sell it at public auction in front of the court-house door of the county in which it was located, after giving certain specified notice, the sale to be for cash and the proceeds of the sale to be applied to the expenses of the sale, to the payment of whatever Mrs. Mustian should pay or be required to pay on the note, and the overplus to be paid to Mrs. Wilkins. The writing contained the further agreement, that Mrs. Mustian might bid for and purchase the property at the sale as if she were a stranger "to this mortgage," and in the event she became the purchaser, the auctioneer who might make the sale was authorized to execute titles to her. Before the note became due Mrs. Wilkins died. It was presented for payment to Mrs. Mustian, and one Davis, as her agent, presented it or had it presented to Flournoy and Swift as trustees and as executors, to see if they could not arrange to pay it as such, and they did make an effort to do so, having in their hands some property which came from Mrs. Wilkins' estate, but did not or could not pay it, and Mrs. Mustian had to pay it. They made no objection to her having a sale to reimburse herself, and it was sold after

advertisement, etc., publicly, for cash, Davis bidding it in for enough to cover the note with interest and cost. Flournoy and Swift knew the sale was to be made, and both were probably present when the sale was made, Wilkins being then out of the State. When Davis took possession no objection was made, and no question made as to the validity of the power under which the sale was made; neither Swift, Flournoy nor Wilkins ever paid him back the money he paid for the property, or made any demand for the possession of it; a short while afterwards Mrs. Mustian made a deed to him, and he sold it to the present holder for a small advance, which was then a fair price for it.

The verdict was for the defendant, and a motion for new trial having been overruled, the plaintiffs excepted.

LOUIS F. GARRARD, for plaintiffs.

PEABODY, BRANNON & HATCHER, for defendant.

SIMMONS, Justice.

There are two questions made for our decision by the record in this case: (1) The first is whether the power of sale given by Mrs. Wilkins to Mrs. Mustian survived after the death of Mrs. Wilkins the maker. (2) If the power did not survive, or was revoked by her death, whether the plaintiffs in the court below are estopped from setting up their claim to the land.

1. The first question depends upon the nature of the conveyance to Mrs. Mustian, whether it gave her such an interest in the land as to render the power of sale irrevocable by the death of Mrs. Wilkins. As a general rule, all powers are revoked by the death of the person creating the power. The exception to this general rule is where the power is coupled with an interest. If the power is coupled with an interest, then the death of the maker does not revoke it. But to render it irrevocable, the interest must be in the property itself, and not merely in the proceeds resulting

from the execution of the power. Code, §2183; Hunt v. Rousmanier, 8 Wheat. 175; Lockett v. Hill, 1 Woods, 552; *Coney* v. *Sanders*, 28 *Ga.* 511; *Lathrop* v. *Brown*, 65 *Ga.* 315. Marshall, C. J., says in the case first cited: "We hold it to be clear, that the interest which can protect a power, after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing." In this case, in order for the power to have survived, Mrs. Mustian must have had some title or estate in the land. Did she have such a title, estate or interest as to render the power irrevocable? We think not. In our opinion, the conveyance to her by Mrs. Wilkins was nothing more than a mortgage to secure her against loss, in the event she had to pay the note on which she was security for Mrs. Wilkins. It was not the intention of either of the parties that the title to the land should pass from Mrs. Wilkins to Mrs. Mustian. The money was not borrowed by Mrs. Wilkins from Mrs. Mustian, but from another party. The conveyance was not made at the time the note was given, but subsequently thereto, for the purpose of indemnifying Mrs. Mustian in case Mrs. Wilkins failed to pay the note and she had it to pay. There is no warranty of title in the conveyance, and it is denominated a mortgage therein. So we think the real intent and understanding of the parties were that it was a mortgage. Being a mortgage, under our code it did not convey the title but was only a security for the debt. Code, §1954. As this instrument passed no title to Mrs. Mustian, she did not get any estate in the land, but only an interest in the proceeds of the sale thereof. She had an interest in the power but none in the thing. Such an interest does not render the power irrevocable by the death of the maker, and therefore the death of Mrs. Wilkins revoked the power of sale contained in

the mortgage. *Lathrop* v. *Brown*, 65 *Ga.* 312; *Miller* v. *McDonald*, 72 *Ga.* 20; Lockett v. Hill, *supra*; Hunt v. Rousmanier, *supra*; Johnson v. Johnson, 27 S. C. 309, s. c. 3 S. E. Rep. 606. It was contended, however, by counsel for defendant in error, that this court, in the case of *Calloway* v. *The Bank*, 54 *Ga.* 441, held that a mortgagee did have such an interest in the mortgaged property as to make the power of sale therein irrevocable. It is true that Judge McCAY, in his reasoning in that case, did say that the mortgagee had an interest in the mortgaged property. While the decision in the case was right, we think, from the authorities above cited, that the reasoning to sustain it was not well founded. In that case, Maxwell, the mortgagor, was not dead, nor was there any effort on his part to revoke the power of sale given in the mortgage. The attack on the power of sale seems to have been made by unsecured creditors of Maxwell. Under the facts of that case, the power of sale could very well be held irrevocable, because they show that the contract between Maxwell and the mortgagees was that, on default of payment of the sum of money secured by the mortgage, the mortgagees were not to be delayed by the necessity of foreclosing in the courts, but either of them might sell all or any part of the lands to pay said indebtedness, after advertising, etc. Maxwell was not dead at the time of the sale; and the power, being part of a contract for consideration, might for that reason be held irrevocable in the lifetime of the mortgagor. In *Lathrop* v. *Brown*, JACKSON, C. J., commenting upon that case, said: "And though Judge McCAY in the 54 *Ga.* does express the opinion that the mortgagee has such an interest in the thing mortgaged as to make the power irrevocable, yet he could not have meant, and did not mean, that it survived the death of the mortgagor, so as to defeat costs of administration, year's support, widow's dower and trust debts." 65 *Ga.* 317.

2. Having determined that the power of sale given to Mrs. Mustian in the mortgage was revoked by the death of Mrs. Wilkins, it follows that the sale of the land under that power, made after the death of Mrs. Wilkins, was void and conferred no title on the purchaser. It only remains for us to decide whether the plaintiffs were estopped by their conduct at the sale. The facts of the case show, in substance, that Mrs. Wilkins died before the note, upon which Mrs. Mustian was security, fell due; that when it became due, Davis, the son and agent of Mrs. Mustian, went to the plaintiffs to see if they could raise the money to pay the note; they endeavored to do so, but failed. The note was then paid by Mrs. Mustian. Davis as her agent then had the land advertised for sale under the power given in the mortgage. On the day of sale he became the purchaser, and Mrs. Mustian executed to him a deed to the land. Two of the plaintiffs were present at the sale, but did not do or say anything in regard to the matter. They made no representations as to the title to the property or the right of Mrs. Mustian to sell it. Davis knew as much about the title as they did. He, being the agent of Mrs. Mustian and having had the property advertised, must have had the mortgage with the power of sale in his possession. Besides, Mrs. Wilkins, as the record shows, was his sister. He thus had as much knowledge of the true state of the title as the plaintiffs had. Indeed, he had better means of acquiring such knowledge than they had. Under this state of facts, we do not think that the plaintiffs are estopped. He was not influenced to make the purchase by any act of theirs, either of omission or of commission. They did not practice any art or deceit. There was no false suggestion, no suppression of truth by them. They were not guilty of any fraud; but, on the contrary, it was admitted in the argument here

v 86-49

that all parties acted in perfect good faith under the belief that the power of sale was still valid when the sale took place. It was an honest and mutual mistake of law. The purchaser was as much bound to know the law as the plaintiffs. All of them being equally ignorant, it is now claimed in behalf of the purchaser that the plaintiffs became estopped by not informing him truly of the law. We know of no law requiring one who is present at a sale like this to act as the legal adviser of an adverse party, or else become forever estopped from contesting the validity of the sale. The law of equitable estoppel, as respects the title to real property, is clearly stated thus by the Supreme Court of the United States : " For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury. Where the estoppel relates to the title of real property, it is essential to the application of the doctrine, that the party claiming to have been influenced by the conduct or declarations of another was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel." Brant *v.* Va. Coal Co., 93 U. S. 326. The same principles appear in the following authorities : Davis *v.* Davis, 26 Cal. 23, and cases cited, s. c. 85 Am. Dec. 157; Chellis *v.* Coble, 37 Kans. 558, s. c. 15 Pac. Rep. 505 ; 2 Herman on Estoppel, §§957, 948 *et seq.* And see Welland Canal Co. *v.* Hathaway, 8 Wend. 480, 24 Am. Dec. 51 and notes ; Crest *v.* Jack, 27 Am. Dec. 353 ; Johnson *v.* Ins. Co. (Ky.) 2 S. W. Rep. 151; Martien *v.* Norris, 91 Mo. 465, s. c. 3 S. W. Rep. 849.

Section 2966 of the code is in these words : " A fraud may be committed by acts as well as words; and one who silently stands by and permits another to purchase his property without disclosing his title is guilty of such a fraud as estops him from subsequently setting up such title against the purchaser." In *Brown* v. *Tucker*, 47 *Ga.* 485, this court held that the section quoted only operates in favor of a *bona fide* purchaser without notice. Granting that the executors stand, in this respect, on the same footing as an owner, still the purchaser in this case does not fill the description, because he was fully acquainted with the facts involving the title, and there was consequently nothing more of which he could be notified.

So far we have treated the executors who are the plaintiffs in this case, as if they were the real owners of the land in dispute, and concluded that they are not estopped. If any doubt attended this conclusion, it would be overcome by considering the wide difference between estopping one who acts as an individual and one who acts in a representative capacity. Where an administrator makes an unauthorized sale of property belonging to the estate, he will not be estopped from recovering it back. *Worthy* v. *Johnson*, 10 *Ga.* 358 ; *Gouldsmith* v. *Coleman*, 57 *Ga.* 425. The estoppel works against the individual, so that he cannot shun personal liability by pleading his want of authority, but in many cases does not work against the estate. Thus in *Sellars* v. *Cheney*, 70 *Ga.* 790, it is held : "That an administratrix stood by and saw property of the intestate sold under a void *fi. fa.* will not estop the administrator *de bonis non* who succeeded her from attacking the validity of the sale." In Magee *v.* Gregg, 11 Sm. & M. 70, it was held that an administrator who was present at the sale of a slave belonging to his intestate, made by another person, and offered no objection to

the sale, could recover the slave from the purchaser; that he might be estopped of his individual rights, but not deprived of his fiduciary right, by such implied assent. See also Lewis *v.* Lusk, 35 Miss. 696, 72 Am. Dec. 153, where it is said that an estate cannot be prejudiced or estopped by the mere silence of the administrator, or by his omission to assert title, or to do an act in relation to its interest. In the present case the plaintiffs declared on three counts, one as executors, another as trustees under the will and another as next friend of the minor beneficiary, and we are asked to hold that they are estopped in all three characters. In addition to the above authorities, we may in answer refer to the case of *Groover* v. *King*, 46 *Ga.* 101, in which WARNER, C. J., says : "Although the minor heirs of the intestate may have had a guardian, and that guardian may have receipted to the administrator for their share of the proceeds of the sale of the land without any knowledge of the illegality of the sale, as the evidence in the record shows, they were not estopped from asserting their claim to the land when they obtained a knowledge of such illegal sale, and it was error in the court to charge the jury that they were estopped. Estoppels are not generally favored by the courts, and it would be a very harsh rule to establish that the minor heirs in this case were estopped when their guardian had no knowledge of the illegality of the sale of the land. But in electing to set aside the sale they must account for what they have received from the sale of the land; they cannot have the land and retain the proceeds of the sale thereof." So here, in making this ruling, we do not intend to hold that the purchaser has no remedy. He can still set up his mortgage by way of cross-bill to the action of ejectment, and have it foreclosed and the land sold, and be paid the amount of the mortgage with interest thereon.        *Judgment reversed.*