Densler, ex'r, &c. v. Edwards, use, &c.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## DENSLER, ex'r, &c. v. EDWARDS, use, &c.

1. It is not sufficient to establish the interest of a witness, to show that he had told a third person, that one half of the debt for the recovery of which the action was brought, was coming to him (witness) and under his control; such proof does not exclude the inference that his right to receive the money and control the suit, was not as an attorney or agent.

2. Where one takes possession of goods left by a deceased person, under a claim which is colorable and fair, he is not liable as an executor *de son tort.*

3. A person who is in possession of goods, after the donor or grantor's death, under a fraudulent deed of gift or other conveyance, in respect to such goods, he is chargeable as an executor *de son tort.*

4. Where a person takes possession of the property of a decedent in one State, under circumstances which would there render him liable as an executor *de son*

*tort,* and removes it, or sells it, and removes without accounting for the money, he may be sued in that character wherever he is found, even in another juris-diction.

WRIT of Error to the Circuit Court of Macon.

The defendant in error declared against the plaintiff, in *assumpsit,* on a promissory note made by his testator and two other persons, on the fourth of February, 1837, for the payment of one thousand dollars, on or before the twenty-fifth of December, 1838. The cause was tried on an issue to the plea of *ne unques executor.* On the trial the defendant below excepted to the ruling of the presiding judge. The bill of exceptions states, that the plaintiff offered to read to the jury, the testimony of one Hansell, to prove that the defendant, after the death of Henry Densler, whose executor he was charged to be, intermeddled with the goods of the deceased; whereupon the defendant introduced the deposition of one Robert Densler, who testified that Hansell "told him, that one-half of the debt sued for was coming to him and under his control;" and then moved to exclude Hansell's deposition from the jury, on the ground of interest. But as it appeared that defendant had cross-examined the witness, and asked him whether he was interested in the event of the suit, and in answer to such question he denied that he had any interest; the objection to the deposition was overruled, and the same was read to the jury.

The plaintiff then adduced two witnesses, who testified that Henry Densler, the deceased, died in Baldwin county, in the State of Georgia, in the latter part of 1838, or begining of 1839; that before and at the time of his death, he was in possession of property of the value of forty-five hundred dollars; which, after that event, was sold by the defendant, in Georgia.

The defendant offered in evidence two bills of sale for the property sold by him, made by the deceased, and dated the 29th of January, 1838; which bills of sale professed to convey the property to the defendant, in consideration of forty-five hundred dollars paid by him. He also introduced several witnesses, who stated that at the time of the sale by the deceased, he (defendant) took possession of the property, and retained it until he sold it.

The plaintiff then offered evidence tending to prove, that the conveyance by the deceased to the defendant, was made to defraud the creditors of the former.

There was no proof that any part of the estate of the ·deceased, had been removed from Georgia to this State, by the defendant, or that the latter had intermeddled with the property in this State.

On this state of facts, the defendant moved the Court to charge the jury,—

1. That if they believed from the evidence the defendant took possession of the goods sold by him, on a claim of property, although it should afterwards appear that he had no right to them, such interference did not make him liable as an executor *de son tort.*

2. If the defendant took the goods under a bill of sale from the deceased, although that bill of sale may have been fraudulent, yet the taking did not make the defendant liable as an executor *de son tort.*

3. If the property was taken by the defendant in the State of Georgia, and there disposed of, he cannot be charged here, because of such intermeddling with the property of the deceased in Georgia.

Which several charges the Court refused to give ; but instructed the jury, that if defendant took possession of the goods of the deceased under fraudulent conveyances, he was liable as executor *de son tort.*

BELSER, for the plaintiff in error. The deposition of Hansell should have been excluded : his interest was sufficiently shown. [1 Phil. Ev. 131–2 ; 1 Dallas' Rep. 272–5 ; 5 Conn. Rep. 258–261 ; 3 Porter's Rep. 279.]

The possession, by the defendant below, of the goods of the deceased, although the bill of sale under which he claimed, was fraudulent, did not make him an executor *de son tort.* [1 Root's Rep. 104 ; 1 Dev. Rep. 139 ; see 1 Ala. Rep. N. S. 237–273 ; 1 Esp. Rep. 335 ; 1 Tenn. Rep. 300 ; 2 Starkie on Ev. 583.]

The defendant is not chargeable as an executor *de son tort,* upon proof of intermedling in Georgia, but it should be shown that the goods of the deceased were removed to this State.— [Story's Conf. of Laws, 421, 2d ed.] The case in 7 Cowen's R, 64, on this point, cannot be sustained. The case in 7 Johns. Rep. 161, lays down a more reasonable rule.

PECK, for the defendant in error. If a person make a gift or

fraudulent sale of his goods, to the prejudice of creditors, and die, the donee or vendee by disposing of them thereafter, becomes liable as an executor *de son tort*. [1 Wms. Ex'r, 139, and note,]—So a person may become an executor *de son tort*, by buying at sheriff's sale goods of an intestate, sold under an execution issued on a judgment confessed in his favor, by intestate, to defraud creditors. [7 Johns. Rep. 161.]

The only claim which the defendant below pretended to have, was under the fraudulent bills of sale, and if the first charge prayed does not refer to these, then it was abstract, and was properly refused. If he claimed under the bills of sale, the question of the intention with which they were made and received, was properly referred to the jury.

If a person intermeddle with the goods of a deceased person, sell them in one State and have the money in another, he may be sued as an executor *de son tort*. [7 Cow. Rep. 64–7.] If the defendant below, sold the goods in Georgia, and removed to this State, the legal presumption is, that he had the proceeds of the sale with him in this State ; and he is accountable for them in the form of action which has been adopted.

The testimony offered to show the admissibility of Hansell's deposition, is so vague, that it does not establish such a certain legal interest as renders a witness incompetent.

COLLIER, C. J.—1. The first question which presents itself is, was the testimony of plaintiff's witness, Hansell, properly admitted ? The admissibility of his evidence depends primarily upon the fact, whether he had such an interest in the event of this cause as rendered him an incompetent witness. It may be regarded as a settled rule, that competency is always presumed until the contrary is shown. [Hall v. Gittings, 2 Har. & Johns. R. 112 ; Stoddard v. Manning, 2 Har. & G. Rep. 147 ; Callis v. Tolson's ex'rs, 6 G. & Johns. Rep. 80 ; Saxton v. Boyce, 1 Bail. Rep. 66 ; Smith v. White, 5 Dana's Rep. 382; Howell v. Delancy, 4 Cow. Rep. 427.] And the burthen of establishing that a witness is incompetent, lies on the party who makes the objection. [Marsden v. Stansfield, 7 B. & C. Rep. 815 ; Watts v. Garett, 3 G. & Johns. Rep. 355.] The evidence, of Hansell's interest, in the event of the suit, is not his own admission, made under oath, but the testimony of a third person, who declares that the

witness told him, that one-half of the debt for the recovery of which the action was brought, "was coming to him (witness) and under his control." These words are of very indefinite import, leaving it to be conjectured in what character the money was coming to him, and for whose benefit he controlled the suit. So far as information is imparted by the bill of exceptions, it is quite as fair to infer, that the witness was acting as an attorney or agent for another, as, that the interest of which he spoke, was personal. To presume the latter, would be to incline most favorably to his incompetency, which we have seen is inhibited by an established rule of law. In the manner in which the evidence of interest is stated upon the record, we think it proves nothing to warrant the exclusion of the deposition. True, the Circuit Court did not place the refusal to reject the evidence, upon the ground that there was not sufficient proof of interest in the witness; but held it inadmissible to adduce evidence to the point, after the witness had disavowed any interest in the suit, upon being cross-examined by the defendant. Whether the reason given for the opinion of the Court, is correct, we need not inquire; the conclusion upon the question submitted, was in conformity to law, and the reasoning by which it was attained has worked no prejudice.

2. It is not pretended, that the defendant was the rightful executor of the deceased debtor of the plaintiff's, but it is contended that he so interfered with the personal property of the deceased, as to make himself liable as an executor *de non tort*. It is laid down generally, that the taking of goods of an intestate, or any intermeddling therewith by a stranger, will, as respects creditors, make him executor *de son tort*, and chargeable at least so far as assets have come to his hands. It is not however, every act of intermeddling, which will charge a man as an executor in his own wrong; if the interference is merely conservative, no such consequence will result from it. [1 Wms. on Exs. 139, 140; 1 Lomax on Exr. & Admr. 77.] So it is said, if a person sets up in himself a colorable title to the goods of the deceased, as where he claims a lien upon them, though he may not be able to make out his title completely, he will not be deemed an executor *de son tort*. [1 Lomax on Exr. & Admr 77:] and in Ferrings v. Jarratt, [1 Esp. Ca. 335,] the Court say that one who takes possession under a fair claim of right does not acquire that character.

The first charge prayed by the defendant, supposes that a

mere claim by him to the property which he sold, however groundless or unfair would relieve him from a suit as an executor in his own wrong, by a creditor of the deceased. Such it is true are not the terms employed, but it is their meaning when legally interpreted. This charge was very properly denied. The law, as we have stated it, is quite as favorable for the defendant as we find it laid down in any of the books; and it requires that the claim under which possession is taken of the goods left by a deceased person, shall be at least colorable, and fair. By this we are to understand that there is some pretence for its assertion, and that the party setting it up, was influenced in his acts by fair and honest intentions.

3. It has been repeatedly holden, that where one is in possession of goods after donor or grantor's death, under a fraudulent deed of gift, or other conveyance made to him, he is chargeable in respect to such goods as an executor *de son tort.* Thus, where the inestate had confessed a fraudulent judgment to defeat his creditors, and his goods were bought by the judgment creditor under a sale on the execution, it was considered as clear, that a creditor might maintain an action against such fraudulent vendee as an executor in his own wrong; although the administrator could not impeach the judgment: [Osborne v. Moss, 7 Johns. Reps. 161; Rattoon, et al. v. Overacker, 8 ib. 97,] see also Dorsey v. Smithson, 6 H. & Johns. Rep. 61; Edwards v. Harbin, 2 T. Rep. 587.] So also where the deceased in his life time, in fraud of his creditors, had made a donation of his effects to his children, it was held that a creditor who had recovered a judgment against his administrator, might file his bill in chancery against the donees and against the administrator *de bonis non* of the deceased, the administrator being dead. For in the case of fraudulent conveyances, the donee in possession, is an executor *de son tort,* although there be a rightful executor or administrator. The reason of which is, that the donee cannot be made responsible for the property, to the rightful representative, the gift being valid as against the parties, and as against persons not creditors. If the donee were not liable as an executor in his own wrong, the property could not be subjected to the payment of the intestate's debts; for the gift, though fraudulent, could not be set aside by the donor or his representative; [1 Lomax Exr. & Admr. 79, and cases cited in note; Chamberlayne v. Temple, 3 Rand. Rep.

384.] These authorities are decisive to show, that the second charge prayed should not have been given, and rest upon reasoning too strong to be impaired by the only opposing adjudication to which we have been cited, viz: King v. Lyman, 1 Root's Rep. 104. The sole ground there, upon which the Court determined that one holding goods under a fraudulent bill of sale was not liable as an executor *de son tort* was, that the conveyance, though fraudulent as against creditors, was valid as between the parties. The insufficiency of the foundation which sustains the case, is too well shown by Chamberlayne v. Temple, to require further notice. Movrill, adm. v. Movrill's exr. [13 Maine Rep. 415,] is entirely unlike the case before us. There, it appeared that a father made a voluntary conveyance of real and personal property to his son, and the son during the life time of the father, sold and disposed of all the personal property so conveyed to him: the Court held, that as it did not appear the defendant had interfered with any property which belonged to the intestate at the time of his death, he could not be charged as an executor in his own wrong.

4. It may perhaps be regarded as settled, that letters testamentary, or of administration, have no efficacy *extra territorium:* and that consequently an executor or administrator in virtue of a foreign probate or administration, has no capacity in other countries to sue or be sued; [Lomax' Ex. & Admr. 119–241; Story's Conf. of L. 421, and cases cited in Note.] But the liability of an executor *de son tort*, to be sued in whatever country he may found, without reference to the jurisdiction in which the intermedling with the goods of the deceased first took place, is a very different question. Mr. Justice Story says, if an executor or administrator go into a foreign country, and without there administering, collect effects and debts of his testator or intestate, found or due there, it would seem upon general principles he would be liable as an executor *de son tort.* [Story's Conf. of L. 424.] If he would be thus chargeable, though he had administered abroad, he could not occupy a more favorable position if it were shown that he had not been authorised by a foreign tribunal to take possession of the estate of the deceased. In Campbell v. Tonsey, [7 Cow, Rep. 64,] the Supreme Court of New York, went so far as to hold, that although an executor or administrator appointed in a neighboring State cannot be sued as such in New York, yet if he collect the effects of his testator and bring them there,

he may be sued as an executor in his own wrong.　Whether this case lays down the law too stringently, we will not stop to inquire; for whether it be defensible or not, we think it clear upon principle, that a person who takes the property of a decedent in one State, and there sells it without legal authority, and removes to another, without having disbursed the proceeds in payment of debts, or otherwise legally accounted for them, is chargeable as an executor *de son tort.*　He must, under such circumstances, be regarded as carrying the money with him wherever he goes; and as the title has never vested in him, he is liable to the creditors of the intestate, or the rightful representative for the amount wherever he may be.

This view of the case is decisive of the questions raised upon the record, and our conclusion is, the judgment must be affirmed.