LATHROP & COMPANY *vs.* BROWN, executor, *et al.*

1. For a power to sell realty to survive the death of the grantor, it must be coupled with an interest, and that interest must be not in the proceeds alone of the thing to be sold, but in the thing itself. Therefore, an instrument in the form of a mortgage, which provided that in case of default in the payment of the debt thereby secured, it should be lawful for the mortgagees to sell the property covered thereby, and the equity of the redemption of the mortgagor, according to the direction of the act of the legislature in such cases made and provided, accounting for the overplus, after satisfaction of the principal and interest due, the charge for advertising, the costs of foreclosure, and all attorney's fees and commissions, if there should be any overplus, to the mortagor, did not vest such a power as would survive the mortgagor and take precedence of dower, year's support, expenses of administration, trust debts, etc.

2. That a part of the money, the repayment of which was secured by mortgage, was used in paying the purchase money of the land mortgaged, did not place it on a different status from the balance of the debt, there being no agreement to that effect.

3. A testator in his lifetime rented certain land and assigned the rent note or contract, and subsequently re-rented to the same tenant for the same year, and after his death his executor received a part of the rent under the second contract, and applied it to the payment of the year's support and other legitimate claims. The tenant was insolvent, and therefore a judgment obtained by the assignees was unproductive :

*Held,* that in a distribution of the estate, the assignees of the rent note would have a claim for the amount collected by the executor which would take precedence of a debt for money entrusted to the testator.

Title. Contracts. Mortgage. Powers. Lien. Administrators and executors. Before A. O. BACON, Esq., Judge *pro hac vice.* Bibb Superior Court. April Term, 1880.

Reported in the decision.

WARREN & GRICE; DUNCAN & MILLER, for plaintiffs in error.

HALL, LOFTON & BARTLETT; J. H. HALL, for defendants.

JACKSON, Chief Justice.

Wm. R. Brown, Sr. died testate, and Wm. R. Brown, Jr. qualified as his executor. The testator was deeply involved in debt, some creditors claiming trust debts, and others liens and mortgages of various grades, and the estate was not large enough to pay all. The widow and minor children claimed a year's support, and the widow's dower out of lands on which there were mortgages or deeds in the nature of mortgages, and other creditors claimed under debts of various grades. Some of these claims were in suit and being pressed against the executor.

Therefore he filed a bill to enjoin these suits, to marshal the assets of the estate and to settle priorities of the several creditors, the widow's right to dower, and the family's claim for a year's support. A temporary injunction was granted to stay the pending suits, and the entire cause, in respect to assets and priority of claims of all kinds, on facts and law, was referred to the master in chancery of the Macon circuit, to whose report both on fact and law exceptions were filed by J. W. Lathrop & Co. The exceptions on matters of fact were either withdrawn, or the facts reported were so modified as to meet the conflicting views of the several creditors and claimants ; and this narrowed the contest in the court below to three exceptions of law taken by Lathrop & Co. to the master's report.

The court, the Hon. A. O. Bacon, Judge *pro hac vice*, presiding, overruled and disallowed two of these exceptions of law, and sustained and allowed the third exception. To this ruling Lathrop & Co. excepted and assigned for error the decision which overruled their first and second exceptions of law, and the executor and Mary Jett Brown, who claimed a trust debt against the testator, and

the widow, excepted to the decision which sustained the third exception to the master's report, both parties uniting in the same bill of exceptions and writ of error, and these assignments of error make the questions for the adjudication of this court.

1. The facts necessary to elucidate the first exception are these : Lathrop & Co. claim that by virtue of a conveyance made to them by the testator while in life, to a plantation known as the Hog-crawl place, in Houston county, and to another plantation in Mitchell county, they are entitled to be paid their debt against the testator in preference to the dower, year's support and trust debt of Mary Jett Brown.

The conveyance made to Lathrop & Co. is dated twenty-fifth of December, 1873, and is to secure three promissory notes due respectively the first of October, first of November, and first of December, 1874, and similar to all statutory mortgages in its essential parts until you reach the following agreement and covenant which is in these words : "And it is hereby mutually covenanted and agreed between the parties to these presents, that if default shall be made in the payment of the principal secured to be paid to the said parties of the second part, and the interest which shall accrue thereupon at any time or times at which they shall be due, or of any part of such principal or interest, that then and thenceforth it shall be lawful for the parties of the second part, their heirs, executors and administrators or assigns, to grant, bargain, sell and dispose of the said hereby granted premises and all benefit and equity of redemption of the said party of the first part, his heirs, executors, administrators or assigns, therein, according to the directions of the act of the legislature in that case made and provided, rendering the overplus of the purchase money to be obtained for the same, after full satisfaction of the principal and interest to be due on such notes in manner aforesaid, and *the charges of advertisement and sales and the costs of foreclos-*

*ing the same,* and all attorney's fees and commissions (if any overplus there shall be) unto the party of the first part, his heirs, executors, administrators or assigns."

Lathrop & Co. contend that this paper with the above covenant passed the title and power to sell this land to them for the purpose of paying this indebtedness of $15,-000.00, and gave them the right to sell the same with such an interest therein as survived the death of the grantor— that thereby the lands never became assets for distribution in the hands of the executor of Wm. R. Brown, deceased, but that Wm. R. Brown in his lifetime had thereby granted such an interest in them to Lathrop & Co., in connection with the power to sell the lands, as that they did not become assets for distribution under the will or the law, and that therefore their right to sell and be paid out of these lands was superior to the claim of a year's support, of dower and of the trust debt—that they had advertised the lands for sale pursuant to this power, when enjoined by the grant of a temporary injunction, and that this ought to be dissolved and the sale proceed; and the executor, widow and beneficiary of the trust on the other hand maintain that Lathrop & Co. took no such interest in these lands by virtue of the covenant above recited as operated to make the power to sell survive, but that with the death of the testator the power died and the lands became assets for distribution according to the priorities of the statute, and that being so their claims were superior to the debt and lien of Lathrop & Co.

The court below ruled this point against Lathrop & Co., holding that the lands were assets, and on this the first error is assigned.

In order that a power to sell should survive the death of the grantor, it must be coupled with an interest, and that interest must be not in the proceeds alone of the thing to be sold but in the thing itself.   Code, §2183; 2 Bouv. Ins., §1931, par. 2, p. 343; 8 Wheaton, 184; 10 Paige, 20; 28 *Ga.*, 511.

This paper with this covenant is only a mortgage. It does not convey title. It was not intended to convey title. Nothing in it shows such intention, and nothing outside of it is disclosed by this record to show such intention. It is merely a security for these three notes to have them paid when they severally became due; and the form of that security is merely a mortgage. There can be no doubt that if these parties had desired to have the title pass for the purpose of securing payment of the notes, it could have been accomplished by a conveyance to that effect, as this court has frequently held and is now well settled law here; 54 *Ga.*, 45; 55 *Ga.*, 650; 60 *Ga.*, 434, 562, but the parties to the conveyance must intend to pass the title, and must by the instrument executed actually pass it.

So far from such being done by this conveyance, there is absolutely in it no power granted to Lathrop & Co. to sell at all, except after foreclosure of the mortgage, execution thereon, and advertisement according to law. The proceeds of sale are to pay the cost of foreclosure, including counsel fees therefor, by the power granted; wherefore is that provision inserted if the instrument were not a mortgage, and such a mortgage as had to be foreclosed?

It was, too, to be advertised. How long, and in what papers, and at what places? The instrument is dumb on these important questions, unless it speaks in this paragraph, "according to the directions of the act of the legislature in that case made and provided," which paragraph follows the power to sell whenever any part of the debt, principal or interest, shall fall due and default be made in the payment thereof. It would seem that the act of the legislature referred to is that in respect to the right to foreclose a mortgage, and the manner of foreclosure when the mortgage is executed to secure the payment of debts falling due at different times; and that act is found in §1965 of the Code, which declares that " if the

mortgage is given to secure several debts falling due at different times, the mortgagee may foreclose when the first becomes due, and the court will control the surplus so as to protect the lien created for the debts not due." In this mortgage the notes fall due at different times, and this clause of the Code seems to have been in the scrivener's mind when this paper was drawn. Be that as it may, it is quite clear that the words "foreclosure" "advertised," and the provision to pay for these counsel fees and costs, must refer to the mode of foreclosing and selling prescribed in §3968 and preceding sections of the Code. If they do not refer to these provisions in regard to sales under the foreclosure of mortgages, we cannot imagine to what they do refer; and the power to sell specifies neither the mode of advertising nor the time within which it is to be done.

The ruling in 54 *Ga.*, 441, does not apply to this case. There, no foreclosure of the instrument was alluded to, and some of the terms for advertising were prescribed. The power to sell without foreclosure was clearly granted. In this case there is no power to sell without foreclosure ; and though Judge McCay in the 54 *Ga.*, does express the opinion that the mortgagee has such an interest in the thing mortgaged as to make the power irrevocable, yet he could not have meant, and did not mean, that it survived the death of the mortgagor, so as to defeat costs of administration, year's support, widow's dower and trust debts. Unless the title passed, the lands were assets and must be administered as such after the death of the mortgagor. No such interest at law or in equity passed to these mortgagees as to divest the title of the testator and prevent the operation of the statute of distributions in applying it to the priority of creditors.    16 Tex., 492.

2. Error is also assigned by Lathrop & Co. because $903.65, was paid by them as purchase money in part for the Hog-crawl plantation in Houston county, and was not allowed them as a preferred claim on that place, even

if their conveyance was only a mortgage and they had no surviving power to sell that land and pay all the indebtedness of the testator to them.

That claim rests on these facts : The jury found on the exception to the master's report on this point that the $903.65, paid by Lathrop & Co. to J. F. Everett on the Hog-crawl place was paid before the death of Wm. R. Brown, Sr., to-wit, on the first of December, 1871, and that it was paid as part of the purchase money which Brown owed to Everett for the Hog-crawl place, but that there was no agreement of the parties that Lathrop & Co. should be subrogated to the rights of Everett. This sum of $903.65, was part of the sum of $15.000,00 secured by the mortgage, and we cannot see how it can have any superior right to the balance of the debt so secured, especially as there was no agreement to that effect. It was secured only by the mortgage, and if that security is inferior to the trust debt and the year's support, so is this part of the indebtedness which in common with the rest the parties agreed to secure by the mortgage, and by nothing else which they bargained for. We are aware of no law which subrogates Lathrop & Co. to the rights of Everett, and thereby elevates this claim above the costs of administration and the trust debt of the deceased. Especially must this be so when the trust money of Mary Jett Brown to the amount of $10.000,00 also was paid into this land by the deceased trustee. Certainly it could have no priority because it was purchase money over the trust fund, which was also purchase money paid for the land as well as trust money confided to the purchaser.

3. The third legal exception to the master's report was sustained by the court and allowed to Lathrop & Co., and to that judgment the trust creditor and the widow and children except and assign for error the ruling of the court below thereon. The facts are these : J. W. Lathrop & Co. held a claim against Clewis, a co-defendant, arising out of a rent contract made by and between the testator

and Clewis, and transferred to Lathrop & Co. by regular assignment. After this assignment . of the rent contract to Lathrop & Co., the said Brown made another contract with Clewis, re-renting the place, and the executor collected a part of this rent, being for the same year, and used it for the estate, paying the year's support and other legitimate claims, to the amount of $1,450.00 with it. Clewis is insolvent; Lathrop & Co. have judgment on the rent note assigned to them by Brown for a valuable consideration, but can make nothing out of it. The master held that this claim was not superior to the trust debt, but the court overruled him and held that it was ; and error is assigned thereon by the trust creditor.

We think that the court below did not err. This executor is in equity. He has collected money on a claim which in equity and good conscience belonged to Lathrop & Co. That money has gone to pay legitimate and preferred debts of the estate, such as the year's support, which is ranked with the costs of administration, and in this court of chancery, which the executor has himself entered to have equity done, he cannot retain funds which *ex æquo et bono* belong to another. It operated as a fraud on Lathrop & Co. to re-rent the plantation after assigning the note previously given for the same rent to them; and as the executor has consummated it by collecting the new and fraudulent claim, equity will not allow him to retain it without accounting for it. Of course Lathrop & Co. must credit their debt with this sum, and if not so provided in the decree, it should be amended to that extent.

Taking the entire case together, we see no error in the ruling of the judge *pro hac vice*, and the judgment is affirmed.

Judgment affirmed.