## The Chattanooga Stove Company *vs.* Adams.

Though a deed of assignment may be void for want of a proper affi-
davit as to the list of creditors, etc., still, if the assignee accept the
trust, go into possession of the goods conveyed, sell them, some
before and some after the assignor's death, and apply the proceeds
to the debts mentioned in the assignment, all in good faith and
without fraud, such assignee cannot be charged as an executor *de
son tort* of the assignor.

June 1, 1888.

Assignments. Fraud. Executor *de son tort.* Before
Judge John T. Clarke. Clay superior court.. Septem-
ber term, 1887.

The Chattanooga Stove Company sued D. C. Adams, as executor *de son tort* of C. L. Laney, on a promissory note given the plaintiff by Laney. The defendant pleaded the general issue; also other matters of defence which will sufficiently appear in the statement of the evidence introduced on the trial, which was as follows:

The plaintiff introduced the note, dated September 20, 1885, due December 15, 1885, for $159.44; also a deed of assignment made by C. L. Laney to D. C. Adams; also inventory and schedule of creditors of Laney, with amounts due each and their places of residence; also inventory of stock of Laney; also amount of accounts due him; also his affidavit; all the last named papers being attached to the deed of assignment, which may be briefly stated as follows: It recites that Laney is in feeble health and unable to carry on business and properly attend to it, and is indebted to a large number of persons in divers sums, the names of such persons, together with the respective amounts due each and their places of residence, so far as known, being at the time and before execution of the deed attached thereto and made a part thereof; Laney being unable to pay the whole of the debts. Therefore, for the purpose of winding up his business and protecting all his creditors, Laney sold, assigned, etc., to Adams all his stock of goods in a certain store-house, and all fixtures therein; also all evidences of debt due Laney, including deeds to secure debts, notes and mortgages, accounts and books of accounts, money, insurance policies, and all other property, real and personal, due and owing to Laney; a full and complete inventory of such property being attached as a part of the deed before its execution; Adams to hold the same upon the trusts that he shall, as well and as soon as the same can be

done so as to protect the rights of creditors, make sale at public or private sale as to him shall seem best, etc., applying the whole proceeds, first, to all costs, including attorneys' fees; next to charges and expenses incurred in the execution of the trust; next to taxes; next to note and mortgage to D. C. Adams, covering stock of goods assigned, for $1,000, dated July 16, 1885, due January 1, 1886; next to note and mortgage for $3,000 on same stock, dated July 16th, 1885, due January 1st, 1886, payable to D. C. Adams and transferred to Mrs. Rosa L. Laney; next to note and mortgage on same stock for $383.92, dated October 1, 1885, and due November 1, 1885, payable to Lucy Adams; next to note and mortgage, covering property assigned, payable to Z. W. Laney, for $2,151.50, dated October 9, 1885, due November 1, 1885; then to the other debts of Laney generally, *pro rata*, etc.; Adams covenanting that he would faithfully discharge the trust, and would, at all times, upon request of Laney, render to the creditors an account, etc. Attached to the deed is an inventory and schedule of creditors of Laney, with amount due each and their places of residence. Also an inventory of stock, taken October 12, 1885, the deed being dated October 26, 1885, footing $5,152.50. Also an inventory of accounts due Laney, October 20, 1885, with memoranda of certain credits at the bottom of the list; the last six names in the list of accounts and the memoranda of credits being in the handwriting of Arthur Hood, attorney at law, who drew the affidavit annexed, which is as follows:

"GEORGIA,—Randolph county.

"In person before me H. O. Beall, clerk of superior court in and for Randolph county, came C. L. Laney, who on oath says that the foregoing inventory and schedule attached to deed of assignment of all indebtedness of C. L. Laney and names of creditors, together with amounts due and places of residence of creditors as therein set out, so

far as the same can be given or is known, is a true and correct list of same. Also the inventory of stock of goods and all other property owned or possessed by said C. L. Laney, also schedule and inventory of debts due C. L. Laney is a just, true and correct inventory and schedule of all property owned by said C. L. Laney, and of all debts due to said C. L. Laney, that said schedule and inventories were attached to said deed of assignment before executing same.    Deponent says that both schedule of creditors of C. L. Laney, also inventory and schedule of property and debts due C. L. Laney, is just and true and correct as set forth; that same were attached to deed of assignment of this date to D. C. Adams at time and before executing the same to D. C. Adams.

Sworn to and subscribed before me this October 26, 1885.

C. L. LANEY.                                        H. O. BEALL, C. S. C."

This deed of assignment was recorded October 27, 1885.

The plaintiff also introduced the following testimony : C. L. Laney was a member of the firm of C. L. Laney & Company, D. C. Adams being the other member of the firm, which carried on business in 1885, in the store-house mentioned in the deed.    Adams withdrew from the firm in July, 1885, and the business was then carried on by Laney alone until October 26, 1885.    Laney then and at the time of his death was a resident of Clay county. The stock, at the time of the making of the deed of assignment, was worth four or five thousand dollars. Laney died November 12, 1885, intestate, and his estate has had no legal representative.    On October 26, 1885, Adams took possession of the stock, accounts, etc., under the deed of assignment.    He sold about $276 worth before Laney's death, soon after which he, Adams, had an inventory of the stock taken, and this showed $4,182 worth still on hand.    On November 12, 1885, after the death of Laney, Adams sold, under the deed, about $1,000 worth of the stock at private sale.    He applied $255 for clerk hire, $79 for rent, $150 for his own services, and about $858 on a mortgage held by him against Laney.    In the early part of 1886, he sold the stock

then on hand, under the deed, at public outcry. It was bid off by R. A. Turnipseed for the wife of Laney, who is the daughter of Adams, and the stock was then turned over to Mrs. Laney by Adams, under the purchase, to be credited on a mortgage held by her against Laney.

When the plaintiff closed its evidence, the defendant moved for a nonsuit, which was granted; to which ruling the plaintiff excepted. In adjudicating the motion for a nonsuit, the court ruled that the deed of assignment was valid, the only objection made by plaintiff's counsel to its validity being that the schedule and inventory of the debts, creditors and assets of the assignor were not such nor so sworn to as required by the statute. The court held the assignment valid as to that objection only, plaintiff's counsel distinctly disclaiming any attack on it for fraud. This ruling was excepted to. The court also ruled that in the event the deed of assignment was void on the ground alleged by plaintiff's counsel, yet as Adams took possession of the stock under the deed before the death of Laney, Adams would not be liable to plaintiff as a creditor of Laney in this action as executor *de son tort*, although he sold the bulk of the stock after Laney's death and applied the proceeds of sale in the way shown by the evidence, provided Adams took the goods in good faith under the assignment, believing it good, and used them in good faith, according to its terms; plaintiff offering no evidence of fraud and disclaiming to do it. This ruling also was excepted to.

W. C. WORRILL, J. D. RAMBO and SCOTT & DILLARD, for plaintiff.

J. C. WELLS, CLARENCE WILSON and W. D. KIDDOO, for defendant.

SIMMONS, Justice.

Only two questions were made in this case in the

court below, which were decided against the plaintiff
in error there and are brought here for review: (1)
whether the assignment set out in this record was valid
or invalid; and (2) whether, if it was invalid, Adams,
the assignee, was liable as executor *de son tort*. The
court below held that the assignment was valid; and
that if it was not, Adams was not liable as executor
*de son tort*, and nonsuited the plaintiff. While we are
inclined to think that this assignment was void, ac-
cording to the decisions of this court in *Turnipseed
et al. vs. Schaefer et al.*, 76 *Ga.* 109; *McMillan, trustee, vs.
Knapp et al., Id.* 171; and *Fort vs. Martin Tobacco Co.*,
77 *Id.* 111, still we think the judgment of the court
below granting this nonsuit was right, on the second
ground. It appears from this record that Laney made
to Adams a deed of assignment of all his property,
consisting of dry goods, etc., for the benefit of his
creditors, on the 26th of October, 1885; and Adams
went immediately into possession of the same and com-
menced to dispose of them. On the 12th of Novem-
ber, 1885, Laney died, and Adams continued to sell and
dispose of the property after his death. In the early
part of 1886, he sold the balance of his stock remain-
ing on hand at public outcry, and applied most of the
proceeds in payment of the preferred debts specified in
the deed of assignment. No attack was made on this
assignment for fraud of any sort. So far as this record
discloses, Adams acted in good faith in accepting the
trust and disposing of the property and applying the
proceeds to the debts mentioned in the assignment.
The deed of assignment was made to him by Laney
before his death, and Laney put Adams in possession
of the property before his death. It is not a case
where a person intermeddles after the death of the
owner of the goods, but where the owner himself, under

a deed which both thought was sufficient, put Adams in possession before his death. We do not think, under this state of facts, that Adams was liable as executor *de son tort*, although the deed under which he acted may have been void on account of a defect in the affidavit. Stewart *vs.* McMinn, 5 Watts & Sergeant, 100 ; Therasson *vs.* Hickok, 37 Vermont, 454.

Judgment affirmed.