## WILLINGHAM *v.* RUSHING *et al.*

1. A factor who has made advances to his principal or incurred expense in taking care of the property of such principal is authorized to sell a sufficient amount of the property to reimburse himself, but the sale must be had according to the usages of trade and in the exercise of a sound discretion. The power of sale above referred to is not revoked by the death of the principal.

2. If a person is lawfully in possession of and sells the goods of a

deceased person under a bona fide claim of right, and without any intention to take upon himself the exercise of those duties which appertain to the office of a legal representative only, though he may not be able to make out a completely strict and legal right, it is sufficient to exempt him from being charged as an executor de son tort.

<div align="center">Argued June 10,—Decided July 27, 1898.</div>

Complaint. Before Judge Ross. City court of Macon. September term, 1897.

*Hardeman, Davis & Turner,* for plaintiff in error.
*M. G. Bayne,* contra.

Cobb, J. Mrs. Rushing, for herself as next friend of certain of her children, brought suit against C. B. Willingham, alleging in the petition, that the plaintiffs were heirs at law of Jas. R. Rushing, deceased; that at the time of his death the defendant was in possession of nine bales of cotton belonging to the deceased, the proceeds of which the defendant, a few days after, sold and converted to his own use; that the deceased died intestate and there was no administration on his estate; and that the defendant, by his wrongful conversion of the money, became an executor de son tort as to the cotton, and liable to the heirs at law of the deceased in an amount double the value of the cotton. The defendant answered, denying the indebtedness, and averring that he was a cotton warehouseman and factor, and as such received from James Rushing in his lifetime the nine bales of cotton, which was shipped to the defendant on the railroad, that he had paid the freight on the same and had also made advances to Rushing, for which advances, as well as his charges for storage and commissions, he had a lien upon the cotton, and to the extent of the lien claimed an interest in the cotton and was authorized to sell for the purpose of reimbursing himself; that he had sold the same in the exercise of a sound discretion and in accordance with the usage of trade in the open market; that after deducting the amount due him for his advances and expenses, the remainder of the proceeds was turned over to the widow of Rushing, one of the plaintiffs, she claiming authority to collect the same, the amount so received by her having been applied to the use of herself and children as a part of

their year's support. Upon the trial it was admitted that the advances had been made on the cotton as claimed by the defendant, and that the various amounts which had been retained by him for advances and expenses were correct, if his claim was allowable. There was evidence for the plaintiff, tending to show that the deceased, during his last illness, had sent a message to the defendant, directing him not to sell his cotton. The persons to whom this message was claimed to have been sent testified that, to the best of their recollection, no such message was ever delivered. The defendant testified that his best recollection was that Rushing left it entirely discretionary with him to sell the cotton when he (defendant) thought it a good time. He sold the cotton for the highest price reached during that or the next cotton season. The court directed the jury to return a verdict for the plaintiff for a sum which was double the amount of the proceeds of the sale which the defendant had retained in payment of his advances and expenses. To the ruling of the court directing the jury so to find the defendant excepted. It is contended by the defendant in error, that a factor has no right, after the death of his principal, to sell property in his possession upon which he has a lien for advances and expenses; and it was further contended, that even if the factor had such a right in the present case, the deceased in his lifetime had restricted the authority as to selling, so as to make the sale by the factor after the principal's death a violation of the latter's instructions. It was contended by the plaintiff in error, that a factor has a right to sell after the death of the principal, and that even if this were not true, under the facts of the present case, the sale, having been made in good faith according to the general usages of trade at the place where the sale was had, was not such an act as would render the factor liable to the heirs of the deceased as an executor de son tort.

A factor has a lien upon the property of his principal for expenses incurred by him and advances on the particular property, as well as all balances on general account. The Civil Code deals with the subject of a factor's lien and the duty of a factor to his principal in section 2929, which is as follows: "A factor's lien extends to all balances on general account, and attaches

to the proceeds of the sale of goods consigned, as well as to the goods themselves. Peculiar confidence being reposed in the factor, he may, in the absence of instructions, exercise his discretion according to the general usages of the trade; in return, greater and more skillful diligence is required of him, and the most active good faith." The factor had a lien at common law for advances and expenses, and the code provision is a simple recognition of the common-law lien of the factor. His lien is a strict common-law lien, that is, one asserted by retention of the property upon which the lien is claimed, and lost by a surrender of the property. It can only be enforced by a sale in accordance with the usages of trade, there being no statutory provision authorizing the foreclosure of such a lien, as is true of other liens. A factor is a mere agent, and his power is governed by the general rules which prescribe the power of an agent. An agency is generally revoked by the death of the principal, but where the agency is coupled with an interest in property upon which the agency is to operate, a revocation does not result from the death of the principal. Civil Code, § 3003. The authority of a factor to sell the property in his possession is therefore revocable at any time, unless coupled with an interest. When advances have been made or expenses incurred, the power to sell is irrevocable to the extent of the lien for such expenses and advances. Such is the general rule. In a case where there is a special contract made between the factor and his principal, in which the powers of the former are defined, the parties will be bound by its stipulations although contrary to the general rule. In any case where the general rule is applicable, the only way in which the principal can defeat the right of the factor to sell a sufficient amount of the property to discharge the sum due him for expenses and advances is to pay or tender to him such an amount as would discharge the indebtedness. *Heard* v. *Russell,* 59 *Ga.* 25. See also Brown *v.* McGran, 14 Pet. 479. In the case of Field *v.* Farrington, 10 Wall. 141, it was held that where factors have made large advances and incurred expenses on account of the property of the principal in his possession, " the principal can not by any subsequent orders control their right to sell at such a time as, in the exercise of a sound discre-

tion, and in accordance with the usage of trade, they may deem best to secure indemnity to themselves and to promote the interests of the consignor; they acting, of course, in good faith and with reasonable skill." When a factor has made advances and incurred expenses, the principal can not revoke his authority to sell for reimbursement. The question therefore is, whether the death of the principal will work a revocation of the factor's authority. The power conferred upon an agent to sell is generally revoked by the death of the principal. If, however, the power to sell be coupled with an interest, death does not work a revocation; but the interest must be in the thing itself, and not merely an interest in the proceeds of the sale. In the case of *Lathrop* v. *Brown*, 65 *Ga.* 312, it was held that a power of sale in a mortgage was revoked by the death of the mortgagor. This ruling was followed in the cases of *Miller* v. *McDonald*, 72 *Ga.* 20, and *Wilkins* v. *McGehee*, 86 *Ga.* 764. These cases hold that the mere execution of a mortgage upon realty, giving to the mortgagee the right to sell the property in payment of his debt after maturity, did not vest in the mortgagee any interest in the property itself, and that therefore such a power was not irrevocable. A similar ruling was made in the case of Hunt v. Rousmanier, 21 U. S. 174. In the opinion Mr. Chief Justice Marshall uses this language: " This general rule, that a power ceases with the life of the person giving it, admits of one exception. If a power be coupled with an ' interest,' it survives the person giving it, and may be executed after his death. As this proposition is laid down too positively in the books to be controverted, it becomes necessary to inquire what is meant by the expression 'a power coupled with an interest?' Is it an interest in the subject on which the power is to be exercised, or is it an interest in that which is produced by the exercise of the power? We hold it to be clear, that the interest which can protect a power after the death of a person who creates it, must be an interest in the thing itself. In other words, the power must be engrafted on an estate in the thing. The words themselves would seem to import this meaning. ' A power coupled with an interest' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same

person.   But if we are to understand by the word 'interest' an
interest in that which is to be produced by the exercise of the
power, then they are never united.   The power, to produce the
interest, must be exercised, and by its exercise, is extinguished.
The power ceases when the interest commences, and, therefore,.
can not, in accurate law language, be said to be 'coupled' with
it."

In the case of Knapp v. Alford, 10 Paige, 205, it was held
that where a person upon going abroad employed an agent to
carry on his business, and gave him the full and entire posses-
sion and control of his property, with a written power to sell all
or certain portions of the same which might at any time be in
his hands, and apply the proceeds to the security or payment of
a specified note, indorsed by such agent and a third person, the
agent had a power coupled with an interest, which survived the
death of the principal, and authorized the agent to sell the prop-
erty for his protection and indemnity after the principal's
death.   Chancellor Walworth, in his opinion, referring to the
case of Hunt v. Rousmanier, cited supra, says, that in that case
"there was no actual pledge of the property.   But a mere power
of attorney was executed authorizing the plaintiff to transfer it
in the name of Rousmanier.   It was upon this ground, as I un-
derstand the case, that C. J. Marshall held that the power was
not coupled with any interest in the vessels.   And I presume
his opinion upon that point would have been different if the
power had been accompanied by an actual delivery of the vessels
as a pledge for the payment of the debt."   In the case of Ham-
monds v. Barclay, 2 East, 227, the right of a factor, who has
made advances and incurred expenses, to sell after the death of
his principal is fully recognized.   In Mechem on Agency,
§ 1052, the proposition is stated in this way:   "The factor's
power to sell for his own reimbursement is a power coupled with
an interest, and is therefore not revoked by the principal's death
or other disability."   See also Russell on Factors and Brokers,
317 (L. L. 48) ; 3 Am. & Eng. Enc. L. 324, note 3.   Possession
of the property by the factor is absolutely essential to the crea-
tion of this character of agency.   The moment expense is in-
curred or advances made, the factor obtains an interest in the

property in his possession. His right in the property is something more than a mere lien. As stated by Mr. Justice Strong in Field v. Farrington, supra, "they [the factors who had made advances] had, therefore, acquired a special property in the cotton, and they held it for their own indemnity as well as for the benefit of the defendant."

While it is true that a factor's rights are those secured by a lien, the fact that his lien is, as has been stated, a strict common-law lien, existing only when he is in possession of the property upon which it is claimed, and lost if it is surrendered, distinguishes his case from liens which are creations of statutory law. The actual " holding " which was absolutely essential to the common-law lien does not in fact exist in the case of statutory liens, but the " holding " which constitutes the latter class of liens is one in contemplation of law only. The relation of the factor to the property in his possession is more analogous to the relation of a creditor by security-deed than that of a creditor by mortgage; and it is the well-settled law of this State, that a power of sale in a security-deed is not revoked by the death of the grantor. *Roland* v. *Coleman,* 76 *Ga.* 652, and cases cited. Applying the principle laid down by Mr. Chief Justice Marshall in Hunt v. Rousmanier, supra, to the case of a factor making advances upon the property in his possession, his interest is "coupled" with a power to be exercised for his indemnity. It is therefore essentially different from a case where the interest does not arise until after the execution of a pre-existing power. This seems to us to be the true distinction between the case of a factor who has the power to sell to reimburse himself, and the case of a mortgagee who has never been in possession of the property, but whose power is to seize and sell it in order that he may acquire an interest in the proceeds of such sale. Another distinction between the case of a factor and the case of a mortgagee is, that the factor is given no right to foreclose his lien, his only remedy being to retain possession and sell according to the usage of trade. The mortgagee has a remedy by foreclosure both at law and in equity.

But even if the power of the factor to sell is terminated by the death of the principal, it does not follow that

a sale by him for the purpose of reimbursing himself for advances made and expenses incurred would necessarily render him liable as an executor in his own wrong. Such an executor is one who intermeddles with the goods of the deceased and performs acts which are characteristic of the office of executor. As a general rule, at common law, in order to charge one as executor in his own wrong, it was necessary to show that no will had been proved or administration granted upon the estate. This, however, was not an invariable rule, as one expressly claiming to act as executor, doing an act which an executor only was authorized to perform, became chargeable as an executor in his own wrong, notwithstanding that there was a lawfully appointed representative of the estate. 1 Will. Ex. (7th Am. ed.) 298, et seq.; 2 Black. Com. 507; 1 Lomax, Ex. (2d ed.) top page 177-8. The code of this State declares that, "If any person, without authority of law, wrongfully intermeddles with, or converts to his own use, the personalty of a deceased individual, whose estate has no legal representative, he shall be held and deemed an executor in his own wrong, and as such shall be liable to the creditors and heirs or legatees of such estate, for double the value of the property so possessed or converted by him; nor shall such executor be allowed to set off any debt due to him by the deceased, or voluntarily paid by him out of the assets." Civil Code, § 3310. Under the terms of this section, it appears that no person can be charged in this State as executor in his own wrong where there is a lawfully appointed legal representative upon the estate. If there is no legal representative upon the estate, the same acts, and no others, which would charge him at common law as an executor in his own wrong would charge him in this State in like capacity. While it takes, as a general rule, very little to charge a person as an executor de son tort, still that which will charge him as such must be such an act as shows an intention on the part of the alleged wrong-doer to take upon himself the exercise of those duties which appertain to the office of the legal representative only. The intermeddling with the goods of the deceased must be of such a character as to indicate that the wrong-doer is endeavoring to perform an act which should be performed only by the legal representative. If the act done,

although it be an act of intermeddling with the goods of the deceased, be inconsistent with an intention on the part of the person sought to be charged as executor in his own wrong to exercise the office and discharge the duties of a legal representative, then such person, although he may thus render himself liable to the legal representative of the estate when appointed, will not be chargeable as an executor in his own wrong. If the act or conduct which is alleged to charge the person as executor de son tort be of such a character that it clearly appears that he was acting in good faith in attempting to protect his own rights, under color of authority, and not solely to prejudice the rights of those interested in the estate of the deceased, then, as a general rule, such act or conduct will not charge a person as executor de son tort.

In Godolphin's Orphans' Leg. (p. 93), a work published in 1685, the doctrine is clearly stated, that if one take the goods of the deceased by mistake, supposing them to be his own, or under color of title, this will not make him an executor in his wrong. This doctrine was followed in a case decided by Lord Kenyon in 1795, who said that " if the defendant came to the possession by colour of a legal title, though he had not made out such title completely in every respect, he should not be deemed an executor de son tort." Femings *v.* Jarrat, 1 Esp. 334. In the case of Densler *v.* Edwards, 5 Ala. 31, Chief Justice Collier says, in the opinion, " So it is said, if a person sets up in himself a colourable title to the goods of the deceased, as where he claims a lien upon them, though he may not be able to make out his title completely, he will not be deemed an executor de son tort." In the case of Ward *v.* Bevill, 10 Ala. 197, it was held, that " Where one takes or retains possession of property under colour of title, and in good faith, believing his right to be superior to that of the lawful administrator, he will not be chargeable as an executor de son tort, though his title prove to be indefensible. In such case the bona fides of the possession is a question of fact, referable to the jury, and it is error for the court to decide it." In the case of O'Reilly *v.* Hendricks, 2 Smed. & M. 388, where certain property was delivered to a surety to indemnify him on his contract of suretyship, with verbal authority to sell in case

of liability on the contract, and, after the death of the principal, the surety having become liable on the contract and discharged the same, he sold the property to indemnify himself, it was held that a creditor of the principal could not maintain an action against the surety as an executor in his own wrong. The same doctrine is also recognized in Smith v. Porter, 35 Me. 287; Claussen v. Lafrenz, 4 Ia. 224; Johnston v. Duncan, 3 Litt. (Ky.) 163-4. See also Lomax, Ex., cited supra, and 7 Am. & Eng. Enc. L. 182 et seq. It might be said, however, that if the factor had no right to sell, the law would charge him with notice of this want of authority, and that no amount of good faith would relieve him from the consequence of his conduct, as the law of this State expressly declares that when a person, "without authority of law," intermeddles with the goods of the deceased, he is chargeable as an executor in his own wrong. Such, however, has not been the interpretation placed by this court upon the section. In the case of *Chattanooga Stove Co.* v. *Adams*, 81 *Ga.* 319, a person named as assignee, in what purported to be a deed of assignment, accepted the trust, went into possession of the goods conveyed, sold them, some before and some after the assignor's death, and applied the proceeds to the debts mentioned in the assignment, acting in perfect good faith and without fraud, believing that he had authority to do what he was doing. It was held that, notwithstanding the assignment may have been absolutely void, the defendant, having acted in good faith in taking possession, in selling the property, and in disbursing the fund, did not render himself liable as an executor de son tort for any of the acts of this character which took place after the death of the assignor. Applying the principles of the cases cited to the present one, even if Willingham had no authority to sell under the law, still if he acted in good faith, without any fraud, under what he believed to be a right resting in him, for the purpose of protecting his own interests, as well as the interests of the estate of his deceased customer, then, although he might be liable as a factor for having exceeded his authority and for having disobeyed instructions, such acts can not charge him as executor in his own wrong and place upon him the penalty of double the value of the goods dealt with.

6

It was contended that this case was controlled by the case of *Wiley* v. *Truett*, 12 *Ga*. 588, where it was held, that " if one has some color to intermeddle with the goods of an intestate, but *exceeds his authority*, that will make him an executor in his own wrong." In that case the person sought to be charged as an executor de son tort came into possession of certain money belonging to the deceased, after his death, by consent of a portion of the heirs at law. This possession was held colorable, and alone would not render the person liable as an executor in his wrong; but after this possession was acquired the money was divided among some of the heirs at law without the consent of others, and this wrongful act was what was held would subject the party to a liability as an executor de son tort. In that case the possession of the property was only colorable, and the subsequent division was entirely without color of authority. In the present case the possession of Willingham was lawful. He came into possession during the lifetime of his customer and was lawfully in possession at the time of his death. The sale, even if not authorized by law, was under color of authority, and if had in good faith and without fraud, for the purpose of protecting himself, would not be sufficient to charge him in the capacity in which he is sued. We think the judge of the court below erred in not submitting the case to the jury for them to determine from all the facts and circumstances whether Willingham acted in good faith and without fraud. If the jury should so find, there would be no liability for the penalty imposed upon persons who unlawfully intermeddle with the goods of a deceased person. If in making the sale he came fully up to the duties which the law imposes upon him, he would be protected, because he had the legal right to make the sale under such conditions. If he deviated from the line of such duties but still acted in good faith, without fraud, he would be protected against being charged as executor in his own wrong, because he was acting under color of authority.

<div align="center">

*Judgment reversed.    All the Justices concurring.*