## 49662. TRI-CITY FEDERAL SAVINGS & LOAN ASSOCIATION v. EVANS.

ARGUED SEPTEMBER 6, 1974 — DECIDED SEPTEMBER 25, 1974.

736

*Harland, Cashin, Chambers & Parker, Terrill A. Parker,* for appellant.

*Henning, Chambers & Mabry, Edward J. Henning,*

*Frank Fuller,* for appellee.

DEEN, Judge.

1. "A State-chartered association or a Federal savings and loan association may issue accounts to two or more persons, as A or B . . . in which event any of such persons who shall first act shall have power to act in all matters related to such account whether the other person or persons named on such account be living or not. The title hereby contemplated and created shall be the full equivalent of the common law joint tenancy with right of survivorship." Code Ann. § 16-431. "While survivorship is not generally favored in the law of this state (see Code § 85-1002), it is not prohibited; and when the contract provides for it in express terms or by necessary implication, it will be enforced." *Sams v. McDonald,* 117 Ga. App. 336, 341 (160 SE2d 594). Under Code § 13-2039, when a deposit is made in the names of two persons, payable to either or the survivor it may be "paid to either of said persons, whether the other be living or not; and the receipt of acquittance of the persons so paid shall be a valid and sufficient release and discharge to the bank for any payment so made." This Code section controls the liability of the bank as to such a deposit, and does not affect the right to the property as between the parties. *Nash v. Martin,* 90 Ga. App. 235 (1) (82 SE2d 658). It follows that unless the defendant savings institution, through its agents, had reason to know that there was a contrary intention on the part of the depositors it acted in accordance with its clear cut legal obligations in paying over the money on demand to the decedent's sister.

2. The uncontradicted evidence before the court consisted of that of Mildred Miller to the effect that her brother wished to set up a joint savings account which he told her she could withdraw at any time, and that of the bank employee who said Evans told him "he wanted his sister's name added to the account," and chose the card which was in fact used in place of the original account card he had previously made out. The employee admitted the same card could have been used had Evans merely wished to add an additional signature to the

account of "Evans Clothing Company" and plaintiff contends that this makes a jury question as to intent. But "Evans Clothing Company" was only a trade name in which Evans did business, and the business was sold by him prior to his death. Trade names are considered as are fictitious names or misnomers; a debt, had it been owed by Evans during his lifetime, could have been sued to judgment against "Evans Clothing Company" and collected from Evans personally. *Eslinger v. Herndon,* 158 Ga. 823 (4) (124 SE2d 900), and see *Mozley v. Devore,* 122 Ga. App. 867 (2) (179 SE2d 102). There was in fact no Evans Clothing Company, but there was an *account,* Mildred Miller's name had been added *to the account,* and the only existent entities were Evans and Miller. No evidence suggests that Evans did not intend for Miller to have a right of survivorship, and the signature card clearly states that she had such right. The signature card was chosen by him.

Code § 113-1102 renders one who without authority of law, and in the absence of an administration of the estate, wrongfully intermeddles with or converts to his own use the personalty of the deceased liable for double the value of the property so possessed or converted. "This Code section is in derogation of common law and must be strictly construed. It is a harsh remedy in that it provides a one hundred percent penalty based on the value of property involved plus the denial of benefits that would otherwise accrue to the defendant. For a petition under this section to be good as against a general demurrer it must show intermeddling in bad faith, possession amounting to a conversion in bad faith, or an attempt to deal with the property in question as an executor in bad faith." *Robbins v. Riales,* 113 Ga. App. 881, 883 (150 SE2d 187) and cit. "While it takes, as a general rule, very little to charge a person as executor de son tort, still that which will charge him as such must be such an act as shows an intention on the part of the alleged wrongdoer to take upon himself the exercise of those duties which appertain to the office of the legal representative only . . . If the act done, although it be an act of intermeddling with the goods of the deceased, be inconsistent with an intention on the part of the person sought to be charged as executor

in his own wrong to exercise the office and discharge the duties of a legal representative, then such person, although he may thus render himself liable to the legal representative of the estate when appointed, will not be chargeable as an executor in his own wrong." *Willingham v. Rushing,* 105 Ga. 72, 79 (31 SE 130). See also *Chattanooga Stove Co. v. Adams,* 81 Ga. 319, 324 (6 SE 695). The form chosen and signed by the decedent clearly constituted his sister as one entitled to the fund. No fraud or bad faith on the part of the defendant appears; it was simply carrying out its statutory duty under the terms of the signature proxy. It undertook no duties appertaining to the office of a legal representative of the estate; Mildred Miller was entitled to no part of it, either as creditor, heir or legatee. The denial of the defendant's motion for summary judgment was error.

3. Further, the plaintiff's release of the person receiving the fund with knowledge of the above facts should inure to the credit of the bank against whom the only misconduct alleged is that it paid the fund over to a co-signatory upon the latter's demand. Appellee contends that the general rule that a release of one joint tortfeasor releases all is not applicable in an action against an entity solely in its capacity of executor de son tort because of the language of *Wiley v. Truett,* 12 Ga. 588 (1): "If one man takes the goods of the deceased and sells, or gives them to another person, this shall charge *him* as an executor *de son tort,* but not such *other person.*" As demonstrated above, this is because the statute is punitive in character, the double damages being assessed only against the person presuming to act without authority as the legal representative of the estate, and the person receiving the benefit of such wrongful act cannot be chargeable with these damages. This does not mean that the person disposing of the goods and the person acquiring them may not be joint wrongdoers in the usual sense of the term. In *O'Neal v. O'Neal,* 176 Ga. 418 (168 SE 262) where a suit brought against a husband and wife jointly, charging the husband as executor de son tort in acquiring possession of the decedent's personal property and turning it over to his wife, and the wife as wrongfully retaining it against the claims of the estate,

the petition was held not subject to general demurrer. If a conversion had resulted here it would have been for the sole benefit of Mildred Miller, or, had Mildred Miller entered on her duties as the named executrix of the estate she would have been entitled to the fund as a part of its proceeds. The plaintiff should not be allowed to "buy" the administration from Miller in return for allowing Miller to keep the proceeds of the account individually while at the same time charging the bank with wrongfully paying them over to her. The release would therefore inure to the credit of the bank.

The trial court erred in denying the defendant's motion for summary judgment.

*Judgment reversed. Eberhardt, P. J., and Stolz, J., concur.*